Mathew J. MOSLANDER, a minor, by and through his Father and Next Friend, Charles Moslander, Charles Moslander and Marian Moslander, Plaintiffs-Respondents,

v.

DAYTON TIRE AND RUBBER COMPANY, Defendant-Appellant.

No. 42643.

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 25, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 16, 1981.

Application to Transfer Denied Jan. 18, 1982.

900

Rexford H. Caruthers, Lashly, Caruthers, Thies, Rava & Hamel, St. Louis, for defendant-appellant.

James F. Koester, St. Louis, for plaintiffs-respondents.

SMITH, Judge.

Defendant appeals from a judgment based upon a jury verdict for plaintiff Mathew Moslander for $1,000,000 and for his parents for $100,000. Mathew, sixteen years old at the time of the accident, was severely injured when he lost control of the automobile he was driving and was struck by another vehicle. Plaintiff's case was based upon the theory that a tire manufactured by defendant was defective, which defect caused a sudden loss of air resulting in Mathew's loss of control. Mathew suffered, among other injuries, severe brain damage causing substantial permanent physical impairment, psychosis and personality disorder making him permanently unemployable and in need of substantial lifetime care. No attack is made on the amount of the judgment.

Defendant raises three points on appeal. The first involves the trial court's refusal on several occasions to grant defendant a continuance. Some history of the proceedings is required to address this point. The accident occurred on January 27, 1977. Plaintiff's petition was filed November 14, 1977, against J. C. Penney Company, the retailer of the tire, and one of its employees who sold the tire to Charles Moslander, Mathew's father.[1] Dayton Tire and Rubber Company was not a defendant. The allegations of that petition premised recovery upon the sale of a defectively designed and manufactured tire which was oversized. On July 25, 1978, plaintiffs filed their amended petition naming Dayton as a defendant and alleging the tire was defectively designed and manufactured causing it "to explode." No specific identification of defect was pleaded. On November 26, 1978, in answer to interrogatories by Penney, plaintiffs stated that the claimed design defect was "oversized" and no manufacturing defect was claimed. In January, 1979 Dayton had its expert examine the tire in the office of its attorney pursuant to a court order to plaintiffs to produce it at that location. In May, 1979, plaintiffs filed an additional answer to interrogatories that it expected to call Lawrence Keltner, a technical tire consultant living in Sun City, Arizona, to testify as an expert witness. Keltner examined the tire in September, 1979. On November 2, 1979, the clerk of the circuit court advised Dayton's attorney that the case was set for trial on January 7, 1980. On that same day plaintiffs sent notice to defendant that Keltner's deposition would be taken on November 30, 1979, in Arizona. On November 20, Dayton filed a motion to quash the notice of deposition on the ground it did not know the position of the expert on defects in the tire and could not therefore prepare for cross-examination. This motion specifically prayed that the court quash the notice of deposition "until such time as Plaintiff provide Defendant with a complete answer to its interrogatories previously filed ... stating the general nature of the subject matter on which Lawrence R. Keltner is expected to testify, and in particular the alleged defect(s) of the tire in question." On November 21, plaintiffs filed an additional answer to interrogatory that Keltner would testify "that the bead of the tire in question was defectively designed and manufactured and that by reason thereof the bead did not properly, adequately or safely seat in and adhere to the rim on which it was mounted." This response would appear to satisfy the prayer of defendant's motion to quash.

On November 23, Dayton filed two motions. The first, for production of the tire for testing and inspection, was granted on November 27, with production ordered for a 30 day period commencing November 28. The second motion was for a continuance of the trial setting. This latter motion recited much of the above history and alleged that "Plaintiff's dilatory disclosure of a specific allegation of defect ... substantially disad-

---

1. Penney and its employee were dismissed by plaintiff at the beginning of trial.

vantaged [Dayton] in its preparation of a defense." It further alleged that it needed time after learning of the specifics of Keltner's testimony to prepare a defense including "an investigation of the specifics, if any, of the evidence, if any, which Mr. Keltner advances as a basis for his opinion." The motion for continuance was denied "without prejudice."

On November 28, plaintiffs amended their petition by interlineation to allege the bead defect. On November 30, Keltner's deposition was taken with all counsel present and the deposition includes extensive cross-examination. On December 10 Dayton filed its second motion for continuance. This motion repeated the allegations of the prior motion and added thereto (1) that the tire had been shipped to defendant's facilities; (2) that three weeks are required for shipping, examination and return of the tire; (3)"that an analysis of the deposition and formulation of an additional set of interrogatories is in order" concerning certain matters testified to by Keltner; (4)that after the interrogatory answers "it will be necessary for Defendant to take Lawrence R. Keltner's deposition"; (5)that counsel for Dayton believed that the time remaining until trial setting is inadequate to prepare for trial. This motion was denied. On December 24, Dayton filed additional interrogatories to plaintiff. On December 31, Dayton filed a motion for production of certain photographs. One set of photographs was taken by a professional photographer and their existence had been disclosed in interrogatory answers filed in May, 1979. Those answers revealed the photographs were in the possession of plaintiffs' attorney. In December, 1980, Dayton attempted to obtain these photographs by subpoena duces tecum directed to the photographer. Plaintiffs' counsel interposed a "work product" objection at the deposition of the photographer. The second set of photographs was taken by Charles Moslander, was not disclosed in plaintiffs' answers to interrogatories, and did not come to the attention of Dayton until December 21,

1979. The motion for production was granted and the photographs were produced. On the same day the motion for production was filed, Dayton filed its third request for continuance. This motion repeated much of the history set forth in the earlier motions and alleged additionally (1) that inspection of the tire was not completed by defendant until December 19 because defendant's testing facilities were "busy"; (2) that defendant's expert had left on vacation and would not be available until January 4; (3) that Dayton's additional interrogatories had not been answered; and (4) that defendant needed the photographs to prepare its defense. This motion was denied January 3, 1980. The case was assigned for trial on January 7, 1980, and a request for continuance was again presented to the trial judge and was denied. Answers to Dayton's interrogatories were filed January 8 before the trial began. They essentially stated plaintiffs' inability to answer some technical questions because of the lack of knowledge of plaintiffs due to the evasive answers of Dayton to plaintiffs' interrogatories.

■ In reviewing the action of the trial court we recognize that the granting of a continuance is within its discretion. *State ex rel. Stanley v. American Surety Co. of New York*, 80 S.W.2d 260 (Mo.App.1935). Our determination is not whether we would have exercised our discretion in the same way, but whether the trial court abused its discretion. We cannot make such a finding here. It may be conceded that the time between the plaintiffs' interrogatory answer first asserting a manufacturing defect and the time of trial was less than might be expected or desired by a defendant in a case of this seriousness. But, neither the record before the trial court nor the briefs before us delineate specifically what matters of defense were denied to defendant by the time limitations involved or that it was precluded from obtaining additional witnesses or evidence. *Derboven v. Stockton*, 490 S.W.2d 301 (Mo.App.1972) l.c. 308.

There are no allegations that defendant had an inadequate time to inspect the tire in question. The bead defect testified to by Keltner was identified by him on the basis of fairly simple visual examination and measurements made in less than ten hours. Defendant had two opportunities to examine the tire and the Dayton expert testified that no defects were found. He did not indicate any inability to fully test the tire because of time constraints. The photographs were made available to the defense and no contention is advanced that additional time would have produced any evidence further explaining or impeaching them. The plaintiffs' answers to defendant's final set of interrogatories reflect no knowledge of the answers by plaintiffs and their explanation that their inability to answer arose because of defendant's "evasive" answers to their interrogatories appears to have at least some merit. Nor are we advised in what way such answers would have supported a defense. No request was made to take a further deposition of plaintiffs' expert or to reopen cross-examination nor does the record disclose what additional areas of cross-examination were necessary for Dayton's defense. The non-availability of the defense expert until three days before trial was not of plaintiffs' making and the record does not reflect in what way it hampered the defense. It is not uncommon for counsel to desire more time to prepare a defense but we are not in a position to hold a trial court's denial of such time to be an abuse of discretion in the absence of a clear showing that such denial would prevent the assertion or development of a defense. *Derboven v. Stockton, supra.* The record before the trial court on the various motions for continuance does not establish such a showing.

■ Defendant next contends that the court erred in allowing the plaintiffs to read to the jury a hypothetical question and answer of Keltner concerning causation of the accident. Keltner testified only by deposition. Defendant makes several contentions concerning the hypothetical question and answer. While we can agree that the question is not a model of clarity we must review defendant's point from the standpoint that the sufficiency of the question is a matter largely within the discretion of the trial court and in assessing the court's action we must examine the witnesses' testimony in entirety not in piecemeal fashion. *Cheek v. Weiss,* 615 S.W.2d 453 (Mo.App. 1981) [1–4]; *Odum v. Cejas,* 510 S.W.2d 218 (Mo.App.1974) [4]. Based on our review of the question and the expert's testimony as a whole we do not conclude that the question and answer were so confusing or ambiguous as to lack probative value.

■ The more serious problem raised involves defendant's contention that the deletion from the question by plaintiffs at trial of certain facts included in the question at deposition made it error to allow the answer in the deposition. This situation arose because at trial defendant objected to various factual predicates of the question as unsupported by the evidence. Plaintiffs, in response to these objections, agreed to omit those facts as the question was read to the jury. As a matter of logic it would seem reasonable to conclude that an answer to a hypothetical question, premised upon certain facts, would not necessarily be the same if some of the important or essential facts were deleted from the question.[2] If that occurs the answer given is to a different question than that presented to the jury. But defendant raised no objection on this ground at the time the hypothetical question and answer were offered into evidence. The failure to do so preserves nothing for review. *Brown v. Payne,* 264 S.W.2d 341 (Mo.1954) [9]; *Fowler v. Daniel,* 622 S.W.2d 232 (Mo.App.1981).

Defendant's final point, somewhat related to the prior point, is that the evidence failed to make a submissible case. In part

---

**2.** We need not decide whether the facts deleted here were "important or essential." Nor need we decide whether the deleted facts were supported by evidence.

this contention relates to the inadequacies of the hypothetical question relating to causation. For purposes of this discussion we will assume that the alterations of the hypothetical question relating to causation deprive the answer of probative value. The other evidence established: (1) the tire was relatively new (1 month old); (2) the expert found that the bead as manufactured on the non-serial side of the tire was narrower in parts than the bead on the serial side; (3) the narrowness and shaping of the bead prevented an adequate seal between the air chamber of the tire and the wheel; (4) this condition would cause a slow leak in the tire which would increase in intensity as more air was lost; (5) when the air pressure in the tire reached a low enough point the bead would unseat causing a sudden loss of pressure; (6) as Mathew was driving he heard a noise like the sudden loss of air and a "clip-clop" sound on the highway; (7) a gouge mark with metal shavings was made in the highway leading to the site of the accident warranting an inference that the rim of one wheel was in contact with the highway; (8) only the tire on the left rear of the vehicle was off the wheel after the accident; (9) the tire with the defect was the tire purchased by Moslander and was on the left rear wheel before the accident; (10) Mathew immediately lost control of the vehicle (a Volkswagen) which pursued an erratic course down the highway into the oncoming lane of traffic where it was struck by another vehicle; (11) Mathew's injuries occurred from the collision. Defendant presented evidence to controvert some of the factual conclusions set forth above.

■■■■ In a products liability case the plaintiff has the burden to establish (1) a defect in the tire; (2) the defect existed when the tire left the manufacturer and entered the stream of commerce; and (3) the defect was the proximate cause of the injuries suffered by plaintiff. *Brissette v. Milner Chevrolet Company*, 479 S.W.2d 176 (Mo.App.1972) [4-6]. Each of these ele-

ments may be established by circumstantial evidence. *Williams v. Ford Motor Company*, 411 S.W.2d 443 (Mo.App.1966) [3]; *Brissette v. Milner Chevrolet Co., supra*, [4-6]. Expert testimony is not necessary to establish any of the elements, circumstances will suffice. *Williams v. Ford Motor Co., supra*, [3]. Here there was direct testimony by an expert that his examination of the tire in question revealed a manufacturing defect which could cause the tire to lose air. This established items (1) and (2). His further testimony that such loss of air could eventually lead to a sudden loss of air and unseating, plaintiffs' testimony that would support a conclusion of a sudden loss of air and unseating, the physical evidence that supported a conclusion of unseating, evidence that the sudden loss of air caused a loss of control resulting in the accident, are together sufficient to support, circumstantially at least, the third element of plaintiffs' case. Defendant's other contentions are no more than an attack on the weight and credibility of the evidence. Weight and credibility are to be determined by the jury, not by us.

The judgment is affirmed.

SATZ, P. J., and SIMON, J., concur.