Arthur E. COUNTESS and June M.
Countess,
Plaintiffs-Appellants-Respondents,

v.

Neal E. STRUNK and Pamela A. Strunk,
Respondents-Appellants,

v.

Elvin MALONEY and Paul Owings,
Third-Party Respondents.

No. WD 32067.

Missouri Court of Appeals,
Western District.

March 2, 1982.

Tom R. Williams, C. B. Fitzgerald, Warrensburg, for plaintiffs-appellants-respondents.

Mary Ann Young, Holden, for respondents-appellants.

Leonard K. Breon, Warrensburg, for third-party respondent Elvin Maloney.

Andrew J. Gelbach, Warrensburg, for third-party respondent Paul Owings.

Before TURNAGE, P. J., and PRITCHARD and CLARK, JJ.

CLARK, Judge.

Plaintiffs as purchasers of a tract of land brought this action against defendants Strunk, the sellers, contending that Strunks

had misrepresented to them permitted commercial use of the property which proved unavailable after the purchase was completed. On this account, plaintiffs sought damages. The petition also asked a declaratory judgment defining permissible uses under the restrictions of a plat dedication and named eleven defendants in addition to the Strunks, all of whom were owners of lots in the subdivision.

On the declaratory judgment aspect of the case, the trial court held that plaintiffs could not erect a commercial structure on the property unless they obtained advance approval as required by the plat dedication. The damage claim was tried to a jury which returned a verdict against the Strunks and in favor of plaintiffs for $60,183.19. The jury also found against the Strunks on the counterclaim which they had filed against plaintiffs and on third-party claims filed against third-party defendants Maloney and Owings.[1] Post-trial motions by defendant Neal E. Strunk were overruled and judgment was entered against him. As to defendant Pamela A. Strunk, however, a motion for judgment notwithstanding the verdict was sustained on the ground that plaintiffs had failed "to prove a basis for a cause of action of fraud and misrepresentation." Plaintiffs and the Strunks appeal.[2]

Points dispositive of this appeal are the contention by Neal Strunk that error was committed in the content of plaintiffs' verdict directing instruction and plaintiffs' contention that the court erred in entering judgment for Pamela Strunk notwithstanding the verdict of the jury. We conclude that plaintiffs' verdict directing instruction failed to postulate the elements of plaintiffs' case and was not supported by the evidence. As a consequence, it is not only necessary to reverse the judgment against Neal Strunk but the judgment in favor of Pamela Strunk also because the evidence

has demonstrated the prospect that a submissible case may be made against both Strunks on an appropriate theory of submission.

With the exception of a disputed exchange between the plaintiffs and Neal Strunk at a meeting preliminary to signing the real estate sale contract, the material facts in the case were uncontroverted. Plaintiffs had contacted defendant Maloney, proprietor of Action Realty Co., and Owings, his salesman, for the purpose of buying land on which to locate an automobile repair business. After looking at a number of properties, plaintiffs settled on a lot in the Fox Fire North subdivision which had been platted by the Strunks. At that time, in June 1976, the subdivision consisted of sixty acres of undeveloped farm land located in Johnson County four miles north of Highway 50 on Highway 13.

Before contracting to purchase a lot in the Fox Fire subdivision, plaintiffs met with Owings, Maloney and Neal Strunk at the Action Realty office to discuss the transaction. Plaintiffs announced their purpose to be the construction of a commercial garage and their attention was directed to the restrictions contained in a dedication which accompanied the subdivision plat. That dedication, critical to the issues in the case and with certain portions emphasized, is as follows:

### DEDICATION

KNOW ALL MEN BY THESE PRESENTS:

THAT THE UNDERSIGNED NEAL E. STRUNK AND PAMELA A. STRUNK, HUSBAND AND WIFE, THE OWNER, THEIR HEIRS AND ASSIGNS, HEREINAFTER CALLED THE PROPRIETORS HAS CAUSED TO BE SURVEYED AND PLATTED THE LAND DESCRIBED ABOVE UNDER THE

1. Disposition concluded on this appeal does not involve issues associated with the counterclaim and third-party claims and the details of those claims are not recounted. No error warranting a new trial as to those issues has been briefed or argued and none has been found. Judg-

ments on the counterclaim and third-party claims are affirmed.

2. The appeal of Pamela Strunk is in respect to the counterclaim and third-party claims, the judgment in her favor being the subject of plaintiffs' appeal.

NAME OF "FOX FIRE NORTH", A SUBDIVISION OF LAND IN JOHNSON COUNTY, MISSOURI, AND HAS CAUSED THE SAME TO BE SUBDIVIDED INTO TRACTS.

THE STRIPS OF LAND MARKED "UTILITY EASEMENT" HEREON ARE HEREBY DEDICATED FOR THE LOCATION, CONSTRUCTION AND MAINTENANCE OF CONDUITS, WATER, GAS AND SEWER PIPES, POLES AND WIRES BY THOSE AUTHORIZED BY THE COUNTY OF JOHNSON OR OTHER AUTHORITIES. THE STRIP OF LAND MARKED "40 FOOT ROADWAY EASEMENT" HEREON SHALL BE A PERMANENT EASEMENT FOR THE CONSTRUCTION OF A PRIVATE ROAD TO BE MAINTAINED BY THE "FOX FIRE NORTH HOMEOWNERS ASSOCIATION". THE EASEMENT SHALL PROVIDE ACCESS TO ALL LOTS IN THE SUBDIVISION AND SHALL BE 20 FEET ON THE NORTH SIDE OF THE SOUTH TIER OF LOTS AND 20 FEET ON THE SOUTH SIDE OF THE NORTH TIER OF LOTS.

THE PROPRIETOR DECLARES THAT THE AFORESAID LAND, SHOWN ON THIS PLAT SHALL BE CONVEYED SUBJECT TO THE FOLLOWING RESTRICTIONS:

PLANS MUST BE FILED WITH AND APPROVED BY THE PROPRIETOR BEFORE THE CONSTRUCTION OF ANY BUILDINGS. NO MORE THAN ONE RESIDENCE SHALL BE CONSTRUCTED ON ANY LOT. BUILDINGS MUST SET BACK A MINIMUM OF 50 FEET FROM THE PROPERTY LINE OF THE STREET IT FRONTS WITH A MINIMUM SIDE CLEARANCE OF 20 FEET. ANY DWELLING SHALL HAVE A MINIMUM USEABLE LIVING AREA OF 1100 SQUARE FEET. NO TRAILER, CAPPED BASEMENT, TENT, SHACK, GARAGES, BARN OR OTHER OUT-BUILDING SHALL AT ANY TIME BE USED AS A DWELLING TEMPORARILY OR PERMANENTLY. ALL LOTS SHALL PRESENT A NEAT APPEARANCE AT ALL TIMES. VACANT LOTS SHALL BE MOWED AT LEAST ONCE A YEAR. ALL BARNS AND OTHER OUT-BUILDINGS WILL HAVE A NEAT APPEARANCE AND BE LOCATED SO AS NOT TO DETRACT FROM NEIGHBORING PROPERTY AND BE SUBJECT TO THE APPROVAL OF THE SELLER AND THE "FOX FIRE NORTH HOMEOWNERS ASSOCIATION". THE NUMBER OF HEAD OF LIVESTOCK SHALL BE LIMITED TO A REASONABLE NUMBER SO AS NOT TO BE A NUISANCE OR UNSIGHTLY.

Evidence as to details of the conversations at this meeting conflicted. Plaintiffs testified that their intention to build and operate a three-bay commercial garage was conveyed to Neal Strunk who agreed the use would be authorized provided a separate driveway giving direct access to Highway 13 were constructed. The sale contract includes provision for such a driveway but makes no express reference to any commercial usage. Strunk disputed plaintiffs' version of the conversation and testified that to his knowledge plaintiffs intended to build a residence with a three-car detached garage. Strunk did confirm his advance knowledge that plaintiffs intended to use the garage to repair automobiles and that customers would be charged for the service. Maloney and Owings testified for plaintiffs and confirmed that Strunk was told before the sale contract was signed that plaintiffs expected to build and operate a commercial garage and that Strunk agreed the necessary permission to build the structure would be given.

The sale transaction was closed and plaintiffs promptly employed an excavator who commenced preparation of the property for a driveway from Highway 13, as the sale contract had required, and for installation of a 50 × 75 foot steel building ordered by plaintiffs. Signs were erected by plaintiffs advertising that a commercial automobile repair business would soon open at the location. Soon after the signs appeared, Neal

Strunk telephoned the plaintiffs and ordered them to stop work informing them that a commercial garage could not be operated on the property. Although plans for the building were submitted to Strunk and his inspection of a similar building already erected was invited, he informed plaintiffs that restrictions on the lots prohibited commercial activity. Plaintiffs then ceased work on the project and commenced this suit.

Strunk's appeal contends, inter alia, that the court erred in giving plaintiffs' verdict directing instruction because the instruction did not submit essential elements and was not supported by the evidence. Plaintiffs' points include the claim that entry of judgment for Pamela Strunk notwithstanding the verdict was error because the proof made a submissible case as to that defendant. Both contentions are meritorious and require that the judgments be reversed and the cause retried, although for reasons somewhat at variance with the arguments fielded by the parties.

The difficulty in this case throughout has been an apparent misconception by the parties that the dedication of the Fox Fire plat restricted use of the lots to residential purposes. Strunk has contended that he could have made no actionable misrepresentation to plaintiffs regarding commercial usage of the property they purchased because such use was governed by the dedication and not by any subsequent act within his control. Strunk and plaintiffs also appear to assume that if plaintiffs were to proceed with construction of the garage and operation of the repair business, it would first have been necessary to secure the approval of the other purchasers to whom Strunk had sold Fox Fire lots. Indeed, a meeting of lot owners was convened after plaintiffs had commenced the excavation work and plaintiffs' request for a "waiver of the restrictions" was rejected. The issue as the parties have joined in argument here and as it was

framed in the plaintiffs' verdict directing instruction turned on whether Strunk led plaintiffs to believe he controlled enforcement of the dedication restrictions, but in fact knew he had no such control or was uninformed one way or the other.

Examination of the dedication reveals no prohibition against erection of business buildings nor any restriction against commercial activity on any land in the subdivision.[3] If the intent of the Strunks was to create a residential area, as indicated by some provisions in the dedication, the document failed to limit potential uses for business pursuits as such. Restriction as to buildings to be constructed was, however, provided in the absolute requirement that the Strunks approve all plans before construction could begin. Not only did the dedication repose absolute authority in the Strunks to approve or disapprove proposed construction, but the dedication provides for no succession of this authority, except by the Strunks' assignment, despite other reference in the document to the "Fox Fire North Homeowners Association."

It is therefore apparent that as between the Strunks and a lot purchaser, such as plaintiffs, the impediment to construction of a business building on a lot in the Fox Fire subdivision lay not in any express restriction in the dedication against commercial activity, but in the necessity to obtain approval of building plans from the Strunks. Significantly, the declaratory judgment entered by the court reaches the same conclusion in holding that plaintiffs were not entitled to commence construction of the garage "until such time that approval is obtained in accord with the dedication filed." That approval was entirely within the authority of Neal and Pamela Strunk as the subdivision "proprietors" to grant or withhold and did not depend on a waiver of plat restrictions as the Strunks have contended.[4]

3. No evidence of zoning restrictions was presented and we therefore assume structure and land use limitations are only to be found within the plat dedication.

4. The present suit does not require consideration of potential controversy between the Strunks and other lot purchasers to whom representations may have been made that no authorization of commercial structures would be

■ The case made on plaintiffs' petition allegations and the evidence viewed most favorably to a submission for plaintiffs was that Strunk induced plaintiffs to buy the Fox Fire lot by assuring them their contemplated commercial usage would be permitted within the terms of the plat dedication. Because only the refusal by Neal and Pamela Strunk to approve building plans could prevent construction of the garage, the representation must necessarily have been an advance commitment by Strunk that he and his wife would approve the plans. Thus, a positive affirmation by Strunk to this effect was critical to a verdict for plaintiffs. Despite this vital element of the case, plaintiffs' verdict directing instruction was as follows:

## INSTRUCTION NO. 2

Your verdict must be for Plaintiffs if you believe:

First, Defendants sold the real estate mentioned in evidence to Plaintiffs, and

Second, Defendants knew that Plaintiffs intended to construct on and use the premises purchased for a commercial automotive repair garage, and

Third, Defendants represented to Plaintiffs that the premises could be used for the purposes intended, and intended that Plaintiffs rely upon such representation in purchasing the real estate, and

Fourth, the representation was false, and

Fifth, Defendants did not know whether the representation was true or false, and

Sixth, the representation was material to the purchase by Plaintiffs of the real estate, and

Seventh, Plaintiffs relied on the representation in making the purchase, and in so relying Plaintiffs were using ordinary care, and

Eighth, as a direct result of such representation the Plaintiffs were damaged.

The instruction failed in several respects to hypothesize any applicable theory to award damages to plaintiffs. In the first place, the instruction does not contain the essential finding of fact that construction of the garage was foreclosed by refusal of the Strunks to approve the building plans as the dedication required. Whatever may have been the representation made at the time of purchase, true or false, plaintiffs bore the affirmative duty of submitting plans, or they were obligated to demonstrate that acts or conduct of the Strunks had made compliance unnecessary and futile.

Secondly, the instruction requires the jury to find Strunk's representation that the lot could be used for commercial purposes to have been false. There was no evidence to support that finding and, moreover, the court found to the contrary in the declaratory judgment phase of the case when it held the dedication to require, and therefore not prohibit, approval for construction of a commercial garage. The evidence requires this conclusion and does not permit a contrary finding.

Finally, the instruction requires the jury to find that the Strunks did not know at the time plaintiffs were assured their commercial use of the lot would be permitted whether that representation was true or false. Positive assurance facially given in unmistakable terms by Strunk was essential to plaintiffs' case and, conversely, uncertainty would have exonerated or tended to exonerate the Strunks. The instruction posed an element in conflict with a plaintiffs' verdict.

■ Plaintiffs could have employed either of two alternative theories for recovery under the proof in the case but neither was postulated under the verdict directing instruction. Failure to present these theories was undoubtedly attributable to the original misconception of restrictions on lot

given. The dedication imposes no restrictions of this character and a purchaser would therefore be entitled to rely on the Strunks' assurance either that residential structures only would be approved by the "proprietors" or, as here, that a commercial garage building would be authorized.

use imposed by the plat dedication. If misrepresentation by Strunk were to be the basis for recovery, the verdict directing instruction should have required a finding that Strunk did not intend to approve the plaintiffs' garage plans at the time he represented to plaintiffs that the lot could be used for that purpose. Alternatively, plaintiffs' instruction could have been based on the failure of the Strunks to approve the plans after they had been committed to do so by Neal Strunk's promise implied in the representation made to induce plaintiffs to contract for the lot purchase.

■ The first theory, false and fraudulent misrepresentation, focuses on the transaction as of the time when the contract was signed by the Strunks. The second is based on breach of the sales contract, that is, a failure by the Strunks to approve the garage plans as promised. Both are within the scope of the evidence which was offered, considered most favorably to plaintiffs, but neither was conformable to the plaintiffs' verdict directing instruction because of the deficiencies noted above.

The foregoing poses the question as to proper disposition of this appeal. As was stated in *Whitney v. Central Paper Stock Company*, 446 S.W.2d 415, 420 (Mo.App. 1969), submissibility of plaintiff's case is normally determined by the theory actually adopted and not on possible but unsubmitted theories. If the evidence fails to support the submitted theory, as was the situation here, we normally reverse outright without remand. That practice, however, admits of exceptions.

In *Smith v. Inter-County Telephone Co.*, 559 S.W.2d 518, 525 (Mo. banc 1977) an erroneous instruction submitted an issue of right to control excavating work and the overall supervisory responsibility of the defendant, an issue not supported by the evidence. Plaintiff had, however, made a submissible case on a theory of inherent danger. In concluding that the case should be remanded to afford plaintiff the opportunity to pursue a correct theory, the court quoted with approval from *Zimmerman v.*

*Associates Discount Corp.*, 444 S.W.2d 396, 398 (Mo. banc 1969) the following:

"'The furtherance of justice requires that a case should not be reversed without remanding unless the appellate court is convinced that the facts are such that a recovery cannot be had; and even though the plaintiff fails to substantiate the theory upon which his case was tried, if he nevertheless shows a state of facts which might entitle him to recover if his case were brought upon a proper theory, the judgment will not be reversed outright, but instead, in the exercise of sound judicial discretion, the case will be remanded to give him the opportunity to amend his petition, if so advised, so as to state a case upon the theory which his evidence discloses.'"

■ Because of the errors noted, first in misplaced assumptions as to the effect of the plat dedication and, second, in the plaintiffs' verdict directing instruction, we conclude that an outright reversal of the judgment would not serve the interests of justice. Without expression of opinion as to the ultimate resolution of fact issues by another jury under proper instructions, we conclude the evidence does show that plaintiffs may be entitled to recover damages by reason of the real estate transaction in issue. The case therefore should be remanded to permit plaintiffs an opportunity for submission of their claim on a proper theory of recovery.

Reversal of the judgment and remand provides a conventional disposition as to the appeal of Neal Strunk relieving him of the judgment erroneously entered against him, but the same may not be said as to Pamela Strunk who prevailed under the judgment below. That judgment is here on plaintiffs' appeal which contends the trial court erred in holding that no case of fraud and misrepresentation was made against Pamela. From what has already been delineated in this opinion, it necessarily follows that the deficiencies in plaintiffs' theory of submission and in the verdict directing instruction would have required a reversal of the verdict against Pamela had the trial court per-

mitted the verdict to stand. The judgment entered by the trial court n. o. v., however, was not for the reason that the instruction was faulty but because the trial court found plaintiffs' evidence to have made no case against Pamela on the theory of recovery embodied in the instruction. The issue on plaintiffs' appeal therefore is whether the evidence admits of a possible recovery against Pamela if a correct theory is applied in the verdict directing instruction.

In considering the evidence bearing on this issue, we view that evidence in the light most favorable to plaintiffs, accept as true all that is not entirely unreasonable, give the plaintiffs the benefit of all favorable inferences and disregard evidence and inferences to the contrary. *Grant v. National Super Markets, Inc.*, 611 S.W.2d 357, 358 (Mo.App.1980).

■ Pamela Strunk was necessarily an active participant in the transaction with plaintiffs in several respects. Her joint ownership of the real estate before it was subdivided is evidenced by her joinder in the plat dedication and the creation of the building approval limitation at the heart of this case. Pamela was one of the "proprietors" and without her advance approval, together with that of Neal Strunk, no structure could be validly erected on any lot in Fox Fire. The real estate sale contract with plaintiffs was signed by her as was the warranty deed. As to her knowledge of or participation in representations made to plaintiffs by Neal Strunk when the sale was negotiated, the record is silent except for Neal's testimony that he kept her informed "as much as any man keeps his wife informed." There is no evidence as to her position on approval of the building plans although the controversy when plaintiffs erected their business signs and commenced excavation could scarcely have escaped notice.

On this record, and conceding to plaintiffs all potential favorable inferences, we cannot say that under a correct submission, no case may be made against Pamela Strunk. Her necessary implication in the land dedication and the requirement that she participate in approval of building construction encompass more than the usual joint tenancy of husband and wife and leave open the prospect that the evidence would demonstrate her participation in and ratification of a sale transaction in which the purpose of plaintiffs to establish their garage business was thwarted. Again, the result will depend on which possible theory plaintiffs elect to pursue and what evidence is given by Pamela, who did not testify at the first trial.

The judgment n. o. v. against plaintiffs as to their claim against Pamela Strunk was erroneously entered because the submissibility of plaintiffs' case was measured by an erroneous instruction. Plaintiffs are entitled to an opportunity to prove a case against Pamela on a proper theory and the judgment in her favor is to be reversed and the case remanded.

Two additional points require consideration because the issues may again arise at retrial. In their brief, the Strunks complain of a protective order issued by the trial court denying Strunks the opportunity to inform the jury that plaintiffs' first petition named Maloney as a defendant and charged that he had misrepresented to plaintiffs the available commercial use of the Fox Fire lot. In an amendment before trial, plaintiffs dismissed their case against Maloney and they proceeded only against the Strunks. The contention of error by the Strunks is that the order denied them effective cross-examination and fair comment on the evidence.

■ Ordinarily, an abandoned pleading is not admissible in evidence but an exception exists where the pleading contains an admission against interest of the pleader. *Yeager v. Wittels*, 517 S.W.2d 457, 466 (Mo. App.1974). Such admissions are not binding on the party but may be employed for impeachment and are to be weighed by the trier of fact in the same manner as any other admission. *Hall v. Denver-Chicago International, Inc.*, 481 S.W.2d 622, 628 (Mo. App.1972); *Jimenez v. Broadway Motors, Inc.*, 445 S.W.2d 315, 317 (Mo.1969); *Bledsoe v. Northside Supply & Development Co.*,

429 S.W.2d 727, 730 (Mo.1968). The basis for receiving in evidence the pleading admission, later abandoned, is its inconsistency with the position taken at trial. *Howell v. Dowell*, 419 S.W.2d 257, 260 (Mo.App. 1967).

■ It is not fully possible to rule the question here because the result on retrial will depend on the theory plaintiffs adopt and the evidence which follows. It does appear, however, that excluding reference to Maloney's status as a defendant in the original petition would not be error because there is no inconsistency in plaintiffs' choice to pursue their claim against only the Strunks. Hopeful or optimistic averments in a pleading which fail to develop at trial do not subject a party to being discredited because a party is not required to prove every fact alleged under pain of impeachment. *Johnson v. Flex-O-Lite Mfg. Corp.*, 314 S.W.2d 75 (Mo.1958). Moreover, Maloney did testify at the first trial and on cross-examination of plaintiff Arthur Countess, he testified that Maloney had affirmed the representation by Strunk that there was no reason why the commercial garage could not be built and operated on the lot if the separate driveway to Highway 13 were constructed as Strunk had specified. The testimony was in conformity with allegations supporting a cause of action against Maloney appearing in the first petition which plaintiffs filed. There was no contradiction or inconsistency useful for impeachment purposes and, hence, no ground to disclose to the jury that Maloney had formerly been a defendant in the case. The trial court was correct in excluding reference to the abandoned pleading and, absent new facts or circumstances materially at variance with the present record, there appears no basis for the Strunks to complain of prejudice if a similar ruling prevails upon retrial.

■ The Strunks have also contended that evidence of the discussion between the Countesses and Neal Strunk preceding execution of the real estate sale contract should have been excluded on the ground that the transaction agreements were merged in the contract and parol may not be employed to vary the terms of the contract.

Again, it is necessary to qualify a decision by recognizing that the ultimate theory adopted by plaintiffs to sustain recovery will bear significantly on what evidence is admissible. If the theory is fraudulent misrepresentation, then evidence of the oral misrepresentation is not within the parol evidence exclusion because fraud cases as well as cases of common mistake, accident or erroneous admissions are recognized exceptions to this rule. *Craig v. Jo B. Gardner, Inc.*, 586 S.W.2d 316, 324 (Mo. banc 1979). If the theory is breach of contract, evidence that Strunk told plaintiffs he would approve their garage plans as the dedication required is admissible, not to vary the contract terms, but to explain and show the true nature of the transaction which the contract embodied. *Boyle v. Crimm*, 363 Mo. 731, 253 S.W.2d 149, 156 (1952).

■ Here, the contract expressly referred to a garage which the buyers were to construct, but the contract was incomplete because the size or usage of the building was not stated nor did the contract provide, except inferentially, what undertaking had been assumed by the Strunks as the proprietors under the plat dedication to approve building plans. A writing which shows on its face that it does not embody the whole contract is, in that sense, ambiguous and permits receipt of parol evidence to show what the parties intended. *Fabick Brothers Equipment Company v. Leroux*, 375 S.W.2d 887, 890 (Mo.App.1964).

Whether plaintiffs decide to proceed on the ground of fraudulent misrepresentation by Strunk of his present intention to permit a commercial structure when in fact his intention was otherwise, or on the ground that the agreement to approve plans for the garage was breached, plaintiffs are entitled to show that the representation was made and that the agreement was an inducement forming consideration for the real estate purchase.

The judgment in favor of plaintiffs and against defendant Neal E. Strunk is reversed. The judgment in favor of Pamela A. Strunk is reversed. The judgment in favor of plaintiffs and against defendants Neal E. and Pamela A. Strunk on their counterclaim is affirmed. The judgment in favor of third-party defendants Elvin Maloney and Paul Owings and against third-party plaintiffs Neal E. and Pamela A. Strunk is affirmed. The cause is remanded for a new trial on the claim of plaintiffs against Neal E. and Pamela A. Strunk.

All concur.