Cornelius FRANKLIN, et al.,
Plaintiff-Appellant,

v.

MERCANTILE TRUST COMPANY,
N.A., Defendant-Respondent.

Nos. 43865, 43866.

Missouri Court of Appeals,
Eastern District,
Division Five.

Feb. 22, 1983.

Motion for Rehearing/Transfer to
Supreme Court Denied April 15, 1983.

John E. Bell, St. Louis, for plaintiff-appellant.

David Wells, St. Louis, for defendant-respondent.

KELLY, Presiding Judge.

Mercantile Trust Company, N.A. appeals from a judgment of the Circuit Court of the City of St. Louis in favor of respondents Cornelius Franklin and Lois Franklin, his wife, in an amount of $15,000.00 actual damages and $18,000.00 punitive damages. Cornelius Franklin above, also appealed from an order of remittitur of $14,000.00 from the actual damages award entered by the trial court and, upon his motion, the two appeals were consolidated under Court No. 43865.

We reverse both judgments and remand the cause to the Circuit Court with directions.

Cornelius Franklin and his wife, Lois, purchased a 1972 Jaguar automobile from Continental Cars, Inc., of Florissant, Missouri, (hereinafter Continental) on June 20, 1977, made a down payment on the purchase price and the dealer arranged for financing of the balance of the purchase price by the Mercantile Trust Company, N.A. (hereinafter Mercantile).

Plaintiff (as Mr. Franklin shall hereinafter be identified) had problems with the car from the date he took delivery and he returned it to the dealer to correct these problems. After the car had been at the dealers for approximately eight days he picked it up and a few days later while driving to Memphis, Tennessee, it overheated and he had to stop at an Osceola, Arkansas service station. The car would not start again, so plaintiff telephoned the dealer in Florissant and was told to have the car towed to a Continental Car dealership in Memphis. The Memphis dealer refused to repair the car and when plaintiff called the dealer in Florissant they wouldn't agree to repair the car either.

The plaintiff returned to St. Louis and went directly to the Florissant dealership

where he demanded that they repair the car or refund the down payment. When the dealer refused his demands plaintiff and his wife went to Mercantile, explained their predicament, and demanded their money back; but Mercantile referred them back to Continental. At this time plaintiff's first payment on the loan at Mercantile was not yet due.

Plaintiff sought the advice of an attorney who advised Mercantile that the transaction had been rescinded, and Mercantile's consumer credit office verbally agreed to take no action on the loan.

Mercantile had the car returned to Florissant and delivered to the dealer. Subsequently Continental Cars in Memphis informed the parties that the engine of the Jaguar would have to be dismantled for internal inspection at a cost of $250.00, and said it would not recommend removing and dismantling the engine for a complete estimate unless plaintiff was "prepared to proceed with full repairs which would be quite expensive."

The car remained at the dealership. Both the dealer and plaintiff refused to pay for the dismantling of the engine and the repairs, and Mercantile took no action on the loan.

In April, 1978, plaintiff filed a petition against both the dealer and Mercantile for rescission and cancellation of the note.

In October, 1978, when plaintiff attempted to purchase a truck at a Ford dealership the credit manager of the agency attempted to obtain financing for the sale through Landmark Bank, but that Bank rejected plaintiff's credit application because it had received a credit report concerning plaintiff from Credit Information Corporation (hereinafter C.I.C.) showing plaintiff to be delinquent in an amount of $3,123.00 on his loan to Mercantile, and that Mercantile had assigned him a rating of I-5, i.e. that plaintiff's usual manner of payment was 120 or more days late. It was the refusal of Mercantile to divulge further information concerning plaintiff's credit to one of Landmark's credit checkers that occasioned the rejection of plaintiff's loan application.

Plaintiff did, however, obtain financing for the truck through Ford Motor Credit and the loan was made for the same amount of money and for the same period of time as the loan application to Landmark, but at a higher rate of interest, i.e. 10.64 annual percentage rate at Landmark and 12.83 at Ford Motor Credit.

Subsequently plaintiff amended his petition, and by such amendment, added a count alleging that Mercantile had caused him to be denied credit by the publication of false credit reports.

In accordance with its contract with C.I.C., Mercantile continued furnishing monthly credit reports on its customers, including plaintiff. According to these reports plaintiff had a "5" rating and a maximum delinquency of $5,766.00, the full amount of the loan. In January, 1980, Mercantile requested C.I.C. to remove the Mercantile account from the file C.I.C. maintained on plaintiff, but then, the next day, instructed C.I.C. to have plaintiff's account shown as unrated ("UR"), with a zero balance and no delinquency.

In February, 1980, plaintiff applied for a loan to purchase a van, and another bank, North St. Louis Trust Company, pulled a credit report on him from C.I.C. showing this "UR" rating; and denied his application because of this information contained in C.I.C.'s report. Plaintiff did, subsequently, obtain a loan for the purchase of the van, but had to pay it off in six months rather than over a longer period.

In March, 1980, plaintiff was again denied credit when he sought to purchase stereo equipment and the reason for this denial was the "I-5" credit rating reported by C.I.C.

Prior to trial plaintiff settled his claim against Continental Cars, and at trial proceeded against Mercantile on Count III of his petition. As stated hereinabove the jury awarded him $15,000.00 actual damages and $18,000.00 punitive damages, but the trial court ordered him to remit $14,000.00 of the actual damages or suffer a new trial.

We shall initially consider Mercantile's appeal because the decision we reach on that appeal renders plaintiff's appeal moot.

Mercantile's first Point Relied On is that the trial court erred in giving a Not-in-M.A.I. verdict directing instruction tendered by the plaintiff. This Instruction is:

Your verdict must be for plaintiff if you believe:

First, Defendant Mercantile caused to be published false credit reports concerning plaintiff; and

Second, Defendant Mercantile knew said reports were false *or* acted in reckless disregard of their truth or fasity [sic]; and

Third, said reports caused or induced one or more prospective lender not to extend credit to plaintiff; and

Fourth, Plaintiff was thereby damaged.

It is Mercantile's contention that plaintiff intended to submit a libel action, and that M.A.I. 23.06(1) or 23.06(2) was the appropriate verdict-director instruction and since there is a pattern M.A.I. instruction for the case prejudicial error is presumed where a Not-in-M.A.I. instruction is submitted unless it is made perfectly clear by the party tendering said instruction that no prejudice could have resulted. *Begley v. Werremeyer Associates, Inc.,* 638 S.W.2d 817, 819[2] (Mo. App.1982).

Plaintiff responds that he need not provide a name for his tort and, without specifying why, states that his action could be one of a number of torts. His position is that his cause of action could be for economic embarrassment, interference with prospective advantage, negligence, tortious interference with contract, prima facie tort, or injurious falsehood.

■ It is correct that plaintiff need not assign his tort a name so long as the allegations of the petition accorded a reasonable and fair intendment state a claim which can call for the invocation of principles of substantive law which may entitle the plaintiff to relief. *Porter v. Crawford & Co.,* 611 S.W.2d 265, 266 (Mo.App.1980); *Annbar As-*

*sociates v. American Express Co.,* 565 S.W.2d 701, 706 (Mo.App.1978). Dean Prosser has said: "There is no necessity that a tort must have a name." Prosser on Torts (4th ed.) § 1 p. 3 (1971).

■ Nevertheless, in considering whether a Not-in-M.A.I. verdict-directing instruction is not error, the ultimate test of the propriety of the instruction is whether it follows the substantive law and whether a jury composed of ordinary people, can understand it. *Executive Jet Management & Pilot Service, Inc., v. Scott,* 629 S.W.2d 598, 608[18] (Mo.App.1981).

With respect to plaintiff's contention, Missouri Courts have not, as yet, recognized the torts of interference with a prospective advantage or economic embarrassment. *Fleischmann v. Mercantile Trust Company National Association,* 617 S.W.2d 73, 74 (Mo. banc 1981). Plaintiff has failed to produce the elements of either tort or to present any arguments on the subject and we, therefore do not consider whether we should recognize such causes of action at this time.

Plaintiff's verdict-director resembles in no way a negligence theory verdict-director. See M.A.I. 17.01, 11.02. There is no use or definition of the terms "negligence" or "negligent." See Notes on Use M.A.I. 17.-01. Plaintiff alleged and attempted to prove that Mercantile's actions were willful and intentional, and thus inconsistent with a negligence theory. See *Ford v. Politte,* 618 S.W.2d 44, 46[1] (Mo.App.1981) where the court said: "A submission on the theory of negligence is not justified by evidence only of an intentional deliberate act. The two are inconsistent and mutually exclusive." It is clear plaintiff did not intend to submit on a negligence theory.

Nor does the verdict-director present all of the elements of tortious interference with contractual or business relations. The elements of these torts are set out in *Fischer, Spuhl, Herzwurm & Associates, Inc. v. Forrest T. Jones & Company,* 586 S.W.2d 310, 315 (Mo. banc 1979); *Francisco v. Kansas City Star Company,* 629 S.W.2d 524, 529 (Mo.App.1981). Had plaintiff intended to

submit either of these he would have been required to submit to the jury under M.A.I. 23.11 or an appropriate modification thereof. His failure to do so would constitute presumptively prejudicial error, Rule 70.-02(b), and plaintiff has made no effort to clearly show that prejudice could not have resulted. *Saunders v. Flippo,* 639 S.W.2d 411, 412[2] (Mo.App.1982).

Plaintiff's contention that his cause of action might be one for prima facie tort, a theory recently recognized in *Porter v. Crawford & Company,* supra, and wherein the elements of the cause of action are set out, is of no aid to him in this appeal because not only does his petition fail to allege the ultimate facts supporting the elements of prima facie tort but the verdict-director also fails to include the elements of the tort.

■ Plaintiff's final contention is that his case could be one for injurious falsehood. The elements of this tort are set forth in *Zippay v. Kelleher,* 638 S.W.2d 292, 294 (Mo.App.1981) and *Annbar Associates v. American Express Company,* supra, l.c. 707. It is sufficient for our decision to point out that the verdict directing instruction under attack did not require the jury to find that the statements of Mercantile were understood by the recipient as disparaging or otherwise injurious that they were published of and concerning the plaintiff's interest, or that reliance by others was reasonably foreseeable. Most importantly however, the instruction does not specify that pecuniary damages must be found. Proof of pecuniary loss is an element of a claim for damages for injurious falsehood. *Annbar,* supra. In failing to present the substantive law for a claim of injurious falsehood plaintiff's verdict-director was prejudicially erroneous.

■ Because we have concluded that the giving of the plaintiff's verdict-directing instruction was erroneous we reverse the judgment of the trial court and remand the cause for a new trial.

Mercantile, in its appeal contends that the trial court erred in failing to direct a verdict in its behalf at the close of all of the evidence and in failing to grant its motion for judgment n.o.v.

■ To determine whether plaintiff made a submissible case we must consider the evidence in a light most favorable to the plaintiff and accept such evidence as true, giving him the benefit of all inferences reasonably to be drawn therefrom and disregard Mercantile's evidence except insofar as it aids plaintiff's case. *Dockery v. Mannisi,* 636 S.W.2d 372, 376[7] (Mo.App. 1982).

While plaintiff has refused to "put a name" on the tort for which he seeks damages, we shall undertake to determine whether he might make a submissible case on any of the theories he suggests.

From the facts in evidence we conclude that plaintiff might have made a submissible case of tortious interference with contract; the contract being the reasonable expectancy of the financing of the loans with the lending agencies would be sufficient to support such a cause of action. *Fischer,* supra, 586 S.W.2d l.c. 315. Viewing the evidence favorably for plaintiff, we believe a jury could find that Mercantile intentionally published a credit report showing a low rating and maximum delinquency knowing that the report would be relied upon by prospective lenders for evaluation of his credit standing when he made future application for the extension of credit. After the first denial of credit plaintiff informed Mercantile of this fact by filing an additional Count in his petition, but Mercantile, nonetheless, persisted thereafter in publishing the negative credit information.

■ Insofar as justification is concerned, plaintiff offered evidence that he and an agent or employee of Mercantile had a verbal agreement that Mercantile would take no action on the loan. Plaintiff also addressed evidence that he revoked his acceptance of the auto and was no longer liable for the sales price pursuant to § 400.2–608

RSMo.1978.[1] Plaintiff's evidence was that the car was substantially defective when he took delivery, that he returned it to the dealer to be fixed, and after it was returned to him it broke down and was returned to the dealer. For a case with similar facts see *Worthey v. Specialty Foam Products, Inc.*, 591 S.W.2d 145 (Mo.App.1979). In *Worthey* the court held that the trial court correctly found revocation of acceptance. Where the buyer successfully revokes acceptance, as plaintiff could have made a case here, he has the same rights with regards to the car as if he had rejected it. § 400.2–608(3). RSMo.1969.

■ If rejection is justified and the buyer does not use the goods, the buyer is not liable for the sales price. *Stephens Industries, Inc., v. American Express Company*, 471 S.W.2d 501, 505[8] (Mo.App.1971). If plaintiff is not liable for the sales price,[2] he was not delinquent of the loan and his "usual manner of payment" was not 120 days or more, and Mercantile would not have been justified in publishing such information.

■ Mercantile contends that its reports to C.I.C. were qualifiedly privileged, but we believe that from a review of the evidence plaintiff, at the very least, made a submissible case of reckless disregard for the truth or falsity of the information and could, therefore, overcome the defense of qualified privilege, where, as here, Mercantile was aware of all of the relevant facts of the dispute between plaintiff and Continental Cars concerning the Jaguar. With respect to the element of damages plaintiff clearly showed he was denied credit after the creditors to whom application for financing received the C.I.C. report containing damaging information by Mercantile, and when financing was made available to him it was on less favorable terms.

We need not dwell on whether plaintiff made a submissible case on the other theories he presented on appeal. Because we conclude plaintiff could have made a submissible case on the theory of tortious interference with contract or business relations we believe it to be appropriate to remand the case so plaintiff might, if he so desires, proceed on his Third Amended Petition or, in the alternative, amend it and submit his case on a theory of substantive law recognized by the Appellate Court of this state, *Zimmerman v. Associates Discount Corporation*, 444 S.W.2d 396, 398[3] (Mo. banc 1969); *Countess v. Strunk*, 630 S.W.2d 246, 252[4] (Mo.App.1982); and submit it to a jury under proper instructions.

Nor need we consider Mercantile's argument concerning libel per quod because plaintiff concedes he did not base his cause of action on libel, and therefore did not submit on that theory.

■ Since we are remanding this cause for a new trial we address Mercantile's final point that the trial court erred in refusing to permit an employee of a finance company to answer a hypothetical directed to whether the employee would have denied an extension of credit to plaintiff if the "I–5" rating was not on the C.I.C. report.

Mercantile contends that this question went to their theory that the information it published to C.I.C. was not the "proximate cause" of the denial of credit to plaintiff.

We would point out that this was not by any stretch of imagination a negligence action.

Assuming the expertise of this witness, despite the fact that his position with the lending institution by whom he was employed was never established in the record on appeal, the expert asked to answer a hypothetical question is required to assume as true the facts presented to him and the question proposed must be predicated on facts which are in evidence. *Garrett v. Joseph Schlitz Brewing Company*, 631 S.W.2d 652, 654[4] (Mo.App.1982).

---

1. All statutory citations are to RSMo.1978.

2. The Security Agreement for this transaction contained a stamp reciting that any holder of this Consumer Credit Contract was subject to the same claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant to the agreement.

The hypothetical question was directed at whether the decision not to extend credit to plaintiff would have been made even if the "I–5" rating of Mercantile had not been on the C.I.C. report. The fact is, the rating was on the document and was in evidence, wherein the hypothetical question asked the witness to assume something contrary to the evidence and a rating Mercantile never denied assigning to plaintiff.

The sufficiency of a hypothetical question is a matter largely within the discretion of the trial court, *Moslander v. Dayton Tire and Rubber Company,* 628 S.W.2d 899, 903[5] (Mo.App.1981), and we fail to discern any abuse of discretion in this instance. The same witness testified in detail concerning the several factors considered by the lender in denying credit to plaintiff when he attempted to purchase some stereo equipment and according to his testimony there are a number of factors his employer took into consideration in reaching its decision whether to extend or deny credit. Among these factors are the length of employment of the applicant, his or her credit history, and in this case, the R–9 rating given plaintiff by J.C. Penney Company.

The purpose of the hypothetical was to draw from this witness that the denial of credit to plaintiff on this occasion was either not influenced by the "I–5" Mercantile rating or was only one among a number of factors that led to that decision.

We conclude that the trial court did not abuse its discretion in sustaining plaintiff's objection.

In summary, since plaintiff refused to specify on what grounds his cause of action is based, we have decided that his verdict-director instruction conforms to no recognized theory of law and the judgment of the trial court must therefore be reversed.

However, because we also have concluded that plaintiff could have made a submissible case on one or more theories, we remand the cause to the Circuit Court to afford him the opportunity to pursue a proper theory. *Countess v. Strunk,* supra.

Judgment reversed and cause remanded to the Circuit Court for a new trial.

PUDLOWSKI and STEWART, JJ., concur.