**Harold WEATHERFORD,**
**Plaintiff-Respondent,**

v.

**H. K. PORTER, INC.,**
**Defendant-Appellant.**

**No. 38246.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

Nov. 22, 1977.

Richard O. Funsch, St. Louis, for defendant-appellant.

Bruce P. Robert, Michael M. Sayers, Clayton, for plaintiff-respondent.

WEIER, Judge.

Defendant H. K. Porter, Inc., appeals from a judgment rendered pursuant to a jury verdict in favor of plaintiff Harold Weatherford in the sum of $5,500. Plaintiff sustained an injury to his left index finger when a hydraulic jack attachment broke while plaintiff was using it and the jack in an effort to push out a dented fender on a van-type motor vehicle. Plaintiff's theory of recovery was strict liability in tort. On appeal defendant contends among other things that plaintiff failed to prove that "the jack attachment was in a defective condition at the time it left the hands of defendant." We reverse on this ground.

■ In considering whether plaintiff made a submissible case, in the situation such as this where defendant presents no evidence, we consider the evidence in the light most favorable to plaintiff, with all reasonable inferences to be drawn therefrom. *Winters v. Sears, Roebuck and Co.*, 554 S.W.2d 565, 569–70[6] (Mo.App.1977). Plaintiff testified that at the time of the trial he had fifteen years experience doing automobile body repair work. Prior to June 4, 1973, when plaintiff was injured, plaintiff had used the same type of jack attachment or fitting on other occasions without mishap. Plaintiff had purchased the attachment in question from "Mac Tool" and had used it successfully one other time before it broke. When the attachment broke plaintiff was not doing anything out of the ordinary; he was using the attachment the only way he knew how, which was to attach it to a hydraulic jack and "Pump 'til it wouldn't go no more." On the occasion when the attachment broke plaintiff had pumped the jack three or four times but "[b]efore I could get pressure on it, the cottonpicker popped in two" injuring plaintiff's finger. Plaintiff did not know why the attachment broke. The foregoing testimony of plaintiff was corroborated by another workman who testified that he saw plaintiff bent over pushing out on the fender with the tool in question, which was the proper tool to use to fix dented fenders and that after the injury the jack attachment was broken.

The jack attachment, introduced into evidence as plaintiff's exhibit 1, originally consisted of two metal parts, one of which broke in two at the time of the accident making a total of three parts at the time of trial. One part is a cylindrically shaped object, four or five inches long. A hole or depression on one end of this piece is just large enough to hold one end of the second piece. The other end of the second piece (now broken off) fans out with a v-shaped indention in the middle of the flat end. This apparently is the end that touches against the automobile frame or fender when a fender is being pushed out. A substantial amount of blue paint has been chipped or worn off from both pieces. Numerous scratches and dents are also evident on both pieces. Inscribed on the first piece is the following:

"H. K. PORTER INC.
BOSTON 43, MASS."

Plaintiff offered no expert testimony and defendant no evidence.

■ From this evidence the issue is presented whether plaintiff met his burden of proof that the jack attachment was in a defective condition at the time it left the hands of defendant. The Restatement (Second) of Torts § 402A (1965), adopted as the law in Missouri in *Keener v. Dayton Electric Manufacturing Company*, 445 S.W.2d 362 (Mo.1969), states:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

Comment g under § 402A states:

"The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him. The seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes makes it harmful by the time it is consumed. The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff; and unless evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained."

But "[t]he existence of a defect may be inferred from circumstantial evidence with or without the aid of expert opinion evidence." *Winters v. Sears, Roebuck and Co.,* 554 S.W.2d 565, 569[5] (Mo.App.1977). "However, when a plaintiff relies upon such proof, he does have the burden of establishing circumstances from which the facts necessary to prove his claim may be inferred, without resort to conjecture and speculation and the circumstances proved must point reasonably to the desired conclusion and tend to exclude any other reasonable conclusion." *Hale v. Advance Abrasives Company,* 520 S.W.2d 656, 658 (Mo.App.1975).

 The controversy on whether plaintiff proved the attachment was defective when it left the hands of defendant centers around whether other reasonable explanations for the product's failure have tended to be eliminated. Defendant first argues that the attachment may have broken because plaintiff misused it. But the evidence and reasonable inferences to be drawn therefrom show that plaintiff was using the attachment properly. Defendant next argues that the jack attachment may

have been tampered with between the time that it had worked properly and the time it broke and that even if there was a defect, plaintiff did not show that the defect was present when defendant parted with the product. Plaintiff claims the jury "could have reasonably eliminated this possibility [of misuse or tampering] on the basis of plaintiff's testimony that he kept his tools in a tool box at the body shop and that his tool box was kept locked." The actual testimony on this subject is as follows:

"Q. [Defendant's attorney on cross-examination] Where are your tools?
A. [Plaintiff] Where is my tools?
Q. Uh-huh. A. They are in my tool box.
Q. Where is that located?
A. Maryland Heights
Q. That is where you went last night after trial, you went down to where your tool box is?
A. I didn't go in my tool box. Hell, I don't work at night.
Q. Did you have keys [for the jack attachment] in your tool box?
A. My box is locked.
Q. The keys to that particular—
A. —Yeah, I got keys for it."

But no reasonable inferences can be drawn from this testimony that plaintiff always kept the jack attachment locked in his tool box when he was not using it and that no one else ever used the attachment. There is no evidence that plaintiff was the only person to use the attachment. There is no evidence on how long before the accident plaintiff purchased the attachment from "Mac Tool," or even whether, when plaintiff bought it, it was new or used. From the worn and battered condition of the attachment it would be more reasonable to conclude that someone had used it many times, than to conclude that it was only used once before it broke. If, in addition to the evidence that the attachment broke when plaintiff was using it for the second time, there was evidence that the attachment was new when plaintiff purchased it and that plaintiff had been the only one who had used it prior to the accident, then the jury might be able to infer from this

evidence that the jack attachment was defective when it left the hands of defendant. However, in the absence of any such evidence, the existence of a defect caused by defendant cannot reasonably be found. This is not the type of accident which common experience tells us would normally not occur in the absence of a defect. *See, Winters v. Sears, Roebuck and Co.*, 554 S.W.2d 565, 570[8] (Mo.App.1977). In *Winters* at 571 the court stated that "a television set properly manufactured and properly serviced by the seller does not, in normal operation, combust." Furthermore, the plaintiff there produced expert testimony to prove a defect was the "most probable cause" of the fire. Here the attachment could have failed because of prior misuse, tampering or simply because of metal fatigue resulting from prolonged use. This case is similar to *Browning Ferris Industries of St. Louis, Missouri, Inc. v. Baden Tire Center, Inc.*, 536 S.W.2d 203, 205[4] (Mo.App.1976) where the mere fact that a tire blew out within minutes after it was installed on plaintiff's truck and had been driven only about two miles did not prove that the tire was defective, the court noting that other possible causes for the blow out were not eliminated. *See also, Hale v. Advance Abrasives Company*, 520 S.W.2d 656, 659[3] (Mo.App.1975) (not a submissible case where evidence pointed equally to a cause for which defendants were responsible and to one for which they were not responsible).

■ This case differs from *Williams v. Ford Motor Company*, 411 S.W.2d 443 (Mo. App.1966), relied on by plaintiff. In *Williams* the steering failed on a new car four days after it had been purchased. The court, at 448 stated "that if a new automobile is properly operated but does not turn in the direction it is steered, then the automobile is not properly manufactured." *See also, Jacobson v. Broadway Motors, Inc.*, 430 S.W.2d 602, 606[3] (Mo.App.1968) (jury could infer that a fire which started under the hood of a three-month-old car while the car was stopped in a parking lot was caused by a defect in material or workmanship). In contrast to *Williams* and *Jacobson* the evidence in the case at bar is barren of any

information on the age or prior history of the jack attachment, other than plaintiff's testimony that he only used it once before it broke. *Lifritz v. Sears, Roebuck and Company*, 472 S.W.2d 28, 32[7] (Mo.App.1971) does not aid plaintiff's case either. In *Lifritz* plaintiff was injured when an aluminum ladder broke. The jury was permitted to infer that the accident was caused by a defect for which the defendant seller was responsible. But, unlike the case at bar, there was evidence in *Lifritz* that no one other than plaintiff had used the product, that it was used only at plaintiff's house, and that the product had never been damaged prior to the accident. *See also, Tucker v. Central Hardware Company*, 463 S.W.2d 537 (Mo.1971) (plaintiff's testimony that neither she nor anyone at her direction had done anything to the air conditioner after it was installed excluded other possible causes for a fire and helped show that a weak spot in the insulation around the wires existed at the time the unit was installed). As noted above, the seller is only liable if the product reaches "the user or consumer without substantial change in the condition in which it is sold." Restatement (Second) Torts § 402A(1)(b) (1965). In the recent case of *Winters v. Sears, Roebuck and Co., supra* at 573, the court discussed this requirement and stated: "We hold that once the plaintiff, in a case of strict liability, produces evidence that neither he nor any third person has made alterations to the product, which would create a defect that could be the proximate cause of the damages incurred, he has made a submissible case as to the issue of the existence of a defect at the time of sale or delivery of the product." Here plaintiff has produced no such evidence.

On the basis of the evidence in this case the jury could not reasonably infer the existence of a defect in the jack attachment at the time the attachment left the hands of defendant. Plaintiff failed to make a submissible case. The trial court erred in overruling defendant's motion for a directed verdict. *See generally*, W. Prosser, Handbook of the Law of Torts § 103, pp.

671–76 (4th ed. 1971); 51 A.L.R.3d 8, Products Liability: Proof of Defect Under Doctrine of Strict Liability in Tort § 2, pp. 13–24; 54 A.L.R.3d 1079, Products Liability: Proof, Under Strict Tort Liability Doctrine, that Defect was Present When Product Left Hands of Defendant §§ 2(b) and (c), pp. 1090–93. It is not necessary to discuss the other points raised by defendant.

The judgment is reversed.

GUNN, P. J. and KELLY, J., concur.