**Randolph R. CRUMP, Appellant,**

v.

**MacNAUGHT P.T.Y. LIMITED, Allied Techtronics, Inc., and George Bognar, Respondents.**

**No. 52162.**

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 1, 1987.

Motion for Rehearing and/or Transfer Denied Jan. 7, 1988.

Application to Transfer Denied
Feb. 17, 1988.

Donald L. Schlapprizzi, St. Louis, for appellant.

J. Richard McEachern, St. Louis, for respondent MacNaught.

Eugene K. Buckley, St. Louis, for respondents Allied and Bognar.

CRIST, Judge.

Randolph Crump appeals from directed verdicts granted all defendants in his product liability suits. We reverse and remand.

In reviewing a directed verdict "we must consider all of the evidence in the light most favorable to the plaintiff, accept as true that which is not entirely unreasonable or opposed to physical laws, accord to plaintiff the benefit of all favorable inferences deducible from the evidence, [and] reject all unfavorable inferences." *Beshore v. Gretzinger*, 641 S.W.2d 858, 862 (Mo.App.1982). Under this standard the evidence before us is:

Harry Crump manager of Crump Transportation Management (CTM) purchased a MacNaught Super Lube Pump Model K2 (K2 grease gun) on September 29, 1979. The K2 grease gun is a gun and pump device that attaches to a five gallon bucket of grease. There is a pump that operates by pressing a "T" handle which depresses a spring in the pump. Depressing the handle pressurizes the content of the bucket and grease is drawn into a hose attached to the base of the pump. The release of the grease from the apparatus is controlled by a grease gun at the other end of the hose. The K2 grease gun is designed such that the spring is held in the device by an anti-rattle washer, a nut, and the "T" handle. The handle and nut both screw onto the same rod. The K2 grease gun was manufactured by respondent MacNaught P.T.Y. Ltd., distributed in the United States by respondent Allied Techtronics, handled in the St. Louis area by Snap–On–Tools, and sold to CTM by respondent George Bognar.

When Bognar delivered the K2 grease gun to CTM it was fully assembled. Three of the four people at CTM who had contact with the K2 grease gun never took it apart or adjusted it and never saw anyone else doing so. The fourth employee of CTM did not testify; however, we must infer he also did not take apart or adjust the K2 grease gun because there was testimony CTM did not have the necessary tools for putting the K2 grease gun back together if it was taken apart.

In 1980 Randolph Crump was employed part-time at CTM and his duties included truck maintenance. In that capacity on August 28, 1980, Randolph was attempting to lubricate a truck with the K2 grease gun. The K2 grease gun was not producing grease. When Randolph pushed down on the handle it kept coming back up and he was unable to get pressure to pump the grease. While trying to use the K2 grease gun, which was assembled when he began work on August 28, 1980, Randolph bent over it to examine it. While looking at it Randolph was hit in the face by part of the

K2 grease gun. Pieces of the K2 grease gun landed on the floor around Randolph.

Harry Crump went into the shop a day or two later and picked up the pieces from the K2 grease gun. The anti-rattle washer was not among those pieces and Randolph's expert was unsure whether the nut Harry Crump picked up was from the K2 grease gun because it appeared cleaner and newer than the other pieces. In the time between the expert's examination of the pieces and trial, the handle of the K2 grease gun was inadvertently lost.

The grease gun pieces were brought to a metalurgical expert on behalf of Randolph. In this expert's opinion "the handle just merely backed off, either from vibration or normal use," "that for some unknown reason the unit apparently came disengaged." During redirect, Randolph's expert mentioned two situations where the handle might "back off" the K2 grease gun; if the anti-rattle washer was missing or if an extra flat washer was placed between the anti-rattle washer and the nut. There was no physical evidence to suggest either of these situations existed. Randolph's expert also testified there was no evidence the nut had been forced off the rod by the pressure of the spring; there was no material failure; the design was a common one and that it was adequate for such a piece of equipment; and even if the handle backed off, the nut should retain the spring because the nut was several turns down the rod both the handle and nut were screwed onto.

■ The evidence and inferences in Randolph's favor are that the K2 grease gun was in the same condition as it left the manufacturer and for some unexplained reason the unit came apart while the spring was depressed so that a part of the K2 grease gun hit Randolph's face with enough force to inflict serious injury.

Although we review the evidence favorably to the plaintiff when defendant is granted a directed verdict, the plaintiff must still make a submissible case. *Courtney v. Emmons,* 702 S.W.2d 139, 140[2] (Mo.App.1985). The question before us is whether Randolph's evidence is sufficient to make a submissible product liability case; the element in dispute is that of defect. For the elements of a product liability action, see *Keener v. Dayton Electric Mfg. Co.,* 445 S.W.2d 362 (Mo.1969), *Winters v. Sears, Roebuck & Co.,* 554 S.W.2d 565 (Mo.App.1977), and Restatement (Second) of Torts § 402A (1965).

■ A defect in a product can be inferred from circumstantial evidence, but the finding of a defect cannot rest on conjecture or speculation. *Helm v. Pepsi-Cola Bottling Co. of St. Louis, Inc.,* 723 S.W.2d 465, 469 (Mo.App.1986); *Patterson v. Foster Forbes Glass Co.,* 674 S.W.2d 599, 603[3] (Mo.App.1984). In *Helm* we affirmed a jury verdict for plaintiff although plaintiff presented no evidence as to why or how a carton for carrying pepsi bottles came open at the bottom allowing the bottles to fall out of the carton and explode. In *Patterson* we also affirmed a jury verdict for plaintiff. In that case there was no evidence to explain the explosion of a baby bottle. On the other hand, in *Weatherford v. H.K. Porter, Inc.,* 560 S.W.2d 31 (Mo. App.1977), we held the trial court erred in denying defendant's motion for a directed verdict. The basis of that decision was plaintiff's failure to prove a hydrolic pump was defective when it left defendant's control. The evidence was plaintiff had only used the jack twice and he kept his tools locked up; he did not testify he kept the jack locked in the tool box and the jack itself was in a worn and battered condition. Respondents rely on *Weatherford;* however, in *Weatherford* we noted if there had been evidence the jack was new when purchased by the plaintiff "then the jury might be able to infer ... the jack attachment was defective when it left the hands of defendant." 560 S.W.2d at 34–35. Randolph presented evidence from which it could reasonably be inferred the K2 grease gun was purchased new by CTM and not dismantled or modified by anyone.

■ The evidence supporting a defect is less direct; the K2 grease gun was fully assembled and then it was not. A case based in strict liability does not require an impossible standard of proof. The proof

need only be realistically tailored to the circumstances. *Williams v. Deere & Co.*, 598 S.W.2d 609, 618[2] (Mo.App.1980). While the mere fact of an accident is insufficient to show a defect if common experience suggests an event would not occur absent a defect, then a defect can be inferred. *Winters*, 554 S.W.2d at 570. Common experience with grease guns may be less than with the exploding television dealt with in *Winters*, but common sense suggests handles do not usually fly off pumps.

A directed verdict should only be granted if reasonable people could only find for the defendant. *Jarrell v. Fort Worth Steel & Mfg. Co.*, 666 S.W.2d 828, 833[3, 4] (Mo. App.1984). Viewing the evidence in the light most favorable to Randolph, and keeping in mind he is entitled to prove his case by circumstantial evidence, we cannot say a reasonable person could only find for defendant.

Judgment reversed and remanded.

GARY M. GAERTNER, P.J., and REINHARD, J., concur.