Larry DANIEL, Plaintiff–Respondent,

v.

INDIANA MILLS & MANUFACTUR-
ING, INC., Defendant–Appellant.

No. 24693.

Missouri Court of Appeals,
Southern District,
Division Two.

March 19, 2003.

Motion for Rehearing or Transfer to
Supreme Court Denied April 8, 2003.

Application for Transfer Denied
May 27, 2003.

Charles B. Cowherd, Husch & Eppenberger, LLC, Springfield, Edward M. Kay, Melinda S. Kollross, Clausen Miller, P.C., Chicago, IL, for appellant.

Steve Garner, Steven D. Harrell, James A. Burt, Strong Law Firm, Springfield, for respondent.

JOHN E. PARRISH, Judge.

Indiana Mills & Manufacturing, Inc., (defendant) appeals a judgment in a case in which Larry Daniel (plaintiff) prevailed in a products liability claim for personal injuries. Plaintiff was injured when a truck he was driving jackknifed and left the roadway. Plaintiff was ejected from the vehicle. Plaintiff contended his seat belt failed, causing him to be ejected from the vehicle during the course of the accident; that he was injured as a consequence of having been thrown from the vehicle. Defendant is the manufacturer of the seat belt assembly. This court affirms.

Defendant presents five points on appeal. Defendant's first point claims the trial court erred in denying defendant's motion for judgment notwithstanding the verdict. The second argues the trial court erred in failing to instruct the jury on comparative fault of plaintiff. The third asserts trial court error in three evidentiary rulings. The fourth claims trial court error in denying defendant's motion for new trial because of juror misconduct. The fifth contends the trial court erred by failing to grant a request by defendant to allocate proceeds from plaintiff's wife's settlement of her claim against other parties for loss of consortium as an offset against damages plaintiff was awarded in his personal injury claim against defendant.

This court first considers Point IV. Point IV asserts the trial court erred in denying defendant's motion for new trial based on juror misconduct. It alleges one juror "performed his own self-test experiment during the trial to determine whether a seatbelted driver could reach across and open the passenger side door of a vehicle as [plaintiff] allegedly did and discussed

his positive findings with the other jurors during deliberations."

■ Where the decision of a trial court is the subject of the appeal, the point must identify the trial court ruling being challenged. Rule 84.04(d)(1)(A). It must concisely state the legal reasons why it contends the ruling constitutes reversible error. Rule 84.04(d)(1)(B). The point must then explain in summary fashion why, in the context of the case, the legal reasons stated support a claim of reversible error. Rule 84.04(d)(1)(C).

■ Point IV is not in the form directed by Rule 84.04(d). The point includes a statement that complies with requirements of Rule 84.04(d)(1)(A); it asserts the trial court erred in denying defendant's motion for new trial. It fails, however, to meet requirements of Rule 84.04(d)(1)(B). It does not identify a legal reason why the ruling would constitute reversible error. After stating the ruling it asserts was error, Point IV narrates circumstances relating to the conduct of one of the jurors who served in the case. Because no legal reason is stated for the alleged error, the narration is meaningless. "Without a concise statement of a legal reason for a claim of reversible error, there can be no explanation, in the context of the case, supportive of a claimed error." *Hampton v. Davenport*, 86 S.W.3d 494, 497 (Mo.App.2002). Point IV does not meet requirements of Rule 84.04(d). It preserves nothing for appellate review. *Tidball v. A.G. Service Center, L.C.*, 75 S.W.3d 850, 853 (Mo.App.2002). Nevertheless, this court may exercise its discretion to consider a deficient point if the issue the point intended to raise can be identified and addressed on its merits. *Bolz v. Hatfield*, 41 S.W.3d 566, 571 (Mo.App.2001). In this case, plaintiff does not appear to have had difficulty gleaning the basis for the claimed error and in responding to that claim. This court can likewise discern the basis for the claimed error. For those reasons, the issue to which Point IV is directed is considered on its merits.

■ Defendant filed a post-trial motion entitled "Motion for Judgment Notwithstanding the Verdict and Alternative Motion for New Trial or to Amend and Correct Judgment with Suggestions in Support Thereof." It asserts as a basis for defendant's request for a new trial:

> [T]here is evidence the jury in this cause considered extraneous, prejudicial information concerning a critical issue in this case. Specifically, jury foreperson Elizabeth Levkulich and juror Natalie Walters have attested upon affidavit that juror William Irmen performed his own self-test experiment during the course of the trial to determine whether a driver could reach over and open the passenger side door of a vehicle while wearing a seatbelt (as [plaintiff] allegedly did in this case) and discussed the results of this self-test experiment (he was able to reach the door) and how it impacted the case with the other jurors during deliberations.

Defendant's post-trial motion attached affidavits of jurors Elizabeth Levkulich and Natalie Walters as exhibits. Each affidavit had the caption of the case at the top of its first page. After the caption, each affidavit identified the affiant whose statement followed and stated each was "duly sworn and of lawful age" followed by numbered paragraphs. In the first three numbered paragraphs of each affidavit, the juror stated she was a resident of Greene County, Missouri, and was competent to give the affidavit; that she was a juror in the trial of the case that took place between April 30, 2001, and May 11, 2001;

that she attended each day of trial and participated in jury deliberations after all the evidence was presented. Paragraph three of Ms. Levkulich's affidavit added that she had been foreperson of the jury. Ms. Levkulich's affidavit included a forth and fifth paragraphs:

4. During our deliberations, I recall another juror named Mr. William Irmen stating that he had done a measurement in his van and he made some remarks about how it impacted the case.

5. Other than that, I do not recall the details of his other statements to the jury during our deliberations or anything else about his test.

Ms. Walters' affidavit included numbered paragraphs 4 through 6:

4. During our deliberations, one of the two male jurors explained how he had gone home and measured the distance between the driver side door and the passenger side door of his van.

5. The same male juror explained to the other jurors, including myself, that he had belted himself into his van and was able to reach across the van to open the passenger side door.

6. That same male juror stated that he had conducted this test during the course of the trial.

The issue at trial was whether plaintiff was wearing the seat belt in the Mack truck he was driving at the time of the accident. Plaintiff contended he was wearing the seat belt; that the seat belt restraint failed and came unlatched during the accident. Defendant asserted plaintiff's evidence had not established that the seat belt caused plaintiff's injuries; that the evidence before the jury had not excluded the possibilities that plaintiff either was not wearing the seat belt or had unlatched himself during the accident to avoid becoming trapped with the gasoline tank he was pulling.

The issue of a driver's ability to unlatch the passenger side door while his seatbelt was in place arose as a result of testimony of plaintiff's daughter, Karen Conran. Ms. Conran told the jury she saw her father in the truck that was later involved in the accident at a truck stop a short time before the accident occurred. She said plaintiff reached across the cab of the truck and unlatched the passenger door; that he was wearing his seat belt when he did so. Defendant contended plaintiff could not have reached the distance required to unlatch the passenger door if his seatbelt had been fastened. Each party presented demonstrative evidence in support of their respective argument that plaintiff either could or could not have unlatched the passenger door if his seatbelt were fastened.

■ Defendant's characterization of the information Mr. Irmen is represented to have disclosed to other jurors as "extraneous evidence" derived from "his own self-test experiment during the trial" is somewhat of an overstatement. The fact issue raised at trial was whether plaintiff, while seated in the driver's seat with his seatbelt fastened, could have reached the latch on the passenger door. Whether a juror's experience in his own vehicle is "extraneous evidence" of what another person could accomplish in a different vehicle is questionable. Even if what occurred could be deemed disclosure of extraneous evidence, "[a] motion for new trial, based on a juror's acquisition of extraneous evidence, is left to the sound discretion of the trial court." *Travis v. Stone*, 66 S.W.3d 1, 3 (Mo. banc 2002); *see also Collins v. Hertenstein*, 90 S.W.3d 87, 109 (Mo.App.2002). Under the facts that were before the trial court, this court finds no abuse of discretion by that court's denial of defendant's

motion for new trial on the basis of asserted juror misconduct.[1] Point IV is denied.

■ Point I asserts trial court error in denying defendant's motion for judgment notwithstanding the verdict. Defendant argues "plaintiff failed to adduce sufficient 'legal and substantial' evidence that the ... seatbelt was worn and inertially released during his accident." Defendant argues that expert evidence presented by plaintiff that his seatbelt inertially released due to acceleration forces sustained in the accident was contrary to physical facts; that plaintiff's evidence "failed to exclude the possibility that [plaintiff] was not wearing his seatbelt or that he unlatched it himself during the accident sequence to avoid becoming trapped with the highly flammable gasoline tanker he was pulling."

■ The existence of a defect may be inferred in a products liability action from circumstantial evidence. *Winters v. Sears, Roebuck and Co.*, 554 S.W.2d 565, 569 (Mo.App.1977). In determining if a submissible case was made, evidence is considered in the light most favorable to plaintiff, together with all reasonable inferences that may be drawn from the evidence. *Id.* Defendant's evidence is disregarded unless it aids plaintiff's case. *Id.* at 569–70.

■ Plaintiff had the burden of proving a defect in the seatbelt, that the defect existed when the product left the manufac-

turer, and that the defect proximately caused plaintiff's injuries. *Moslander v. Dayton Tire and Rubber Co.*, 628 S.W.2d 899, 904 (Mo.App.1981). Each element could be established by circumstantial evidence. *Id.* Defendant admitted that if the seat belt restraint came unlatched during the accident, it would be a product failure.

Plaintiff testified that he was wearing his seatbelt at the time of the accident. A paramedic that responded to the accident testified plaintiff had marks on his pelvis that was consistent with seatbelt use. Plaintiff told a highway patrol officer who went to the scene of the accident that he was wearing his seatbelt. Karen Conran, plaintiff's daughter, testified plaintiff was wearing his seatbelt when she saw him just prior to the accident. There was evidence that plaintiff always wore his seatbelt.

The seatbelt was spooled out of its retractor after the accident occurred. Experts for plaintiff and defendant testified that absent plaintiff having used a comfort clip, plaintiff would have to have been wearing the seat belt in order for it to spool out without retracting. Plaintiff testified he was not wearing a comfort clip.

Testing data was produced that specified vertical acceleration forces of 105 to 135

---

1. In addressing Point IV this court considered only the issue stated in that point. Point IV did not assert, and this court, therefore, has not addressed, complaints regarding procedure the trial court followed in considering and ruling on defendant's motion for new trial. In a footnote in the argument portion of its brief, defendant alludes to testimony of another juror "regarding Irmen's misconduct as an offer of proof" and that defendant "sought to obtain live testimony from Levkulich, Walters and Irmen but was denied the opportunity to do so." In another footnote defendant states, "To the extent there is any question as to whether Irmen actually performed his reported experiment, [defendant]

is entitled to an evidentiary hearing to elicit sworn testimony from Irmen in this regard." Point IV does not assert trial court error in not permitting testimony of the individuals defendant identified in his footnotes or in the trial court's failure to conduct an evidentiary hearing. "An appellate court reviews only issues raised in the points relied on in an appellant's brief." *State v. Rogers*, 973 S.W.2d 495, 498 (Mo.App.1998). *See also Villines v. Mier*, 58 S.W.3d 921, 924 (Mo.App. 2001); *Russ v. Russ*, 39 S.W.3d 895, 899 n. 5 (Mo.App.2001); *Greene County Concerned Citizens v. Board of Zoning Adjustment of Greene County*, 873 S.W.2d 246, 255 (Mo.App.1994).

g's were required for the seatbelt in plaintiff's truck to unlatch. Tests indicated that a one-foot vertical drop produced 70 g's with no damage to the truck's suspension system. There was evidence that there was significant and permanent damage to the undercarriage of the truck from the accident. An expert witness for plaintiff testified that the actual collision was the equivalent to a 6 to 7–foot vertical drop in contrast to the one-foot drop in the test. The jury could infer from the evidence that plaintiff's accident produced vertical acceleration forces greater than 70 g's; that the vertical acceleration forces produced by the accident were sufficient to unlatch the seat belt.

There was evidence from tests performed on behalf of plaintiff that had he not been wearing his seat belt at the time of the impact, he would have struck the upper portion of the cab door. Neither plaintiff's injuries nor the damage done to the truck supported a finding that plaintiff struck the upper part of the cab door. There was evidence that plaintiff's body struck the lower portion of the cab door. That evidence was relied on by expert witnesses testifying on behalf of plaintiff as proof that vertical acceleration forces were sufficient to cause inertial release.

 The finding of a defect cannot rest on conjecture or speculation. *Crump v. MacNaught P.T.Y. Ltd.,* 743 S.W.2d 532, 534 (Mo.App.1987). On the other hand, a products liability case does not require an impossible standard of proof. *Id.* Plaintiff was not required to exclude all possibility of another cause for his injuries, nor was he required to present evidence that would be undisputed. *Henderson v. W.C. Haas Realty Management, Inc.,* 561 S.W.2d 382, 385 (Mo.App.1977). It is sufficient if the facts and circumstances in evidence fairly warrant the conclusion that the defect claimed by plaintiff was the cause of the injury he sustained. *Id.* The evidence sufficed to fairly warrant the conclusion the jury reached, that plaintiff was wearing his seatbelt at the time of the accident and that the seatbelt inertially released due to acceleration forces sustained in the accident. Point I is denied.

Point II is directed to the trial court's refusal to submit a comparative fault instruction tendered by defendant. Point II argues the trial court erred in not instructing the jury on comparative fault because "Section 537.765 RSMo. dictates that 'pure comparative fault shall apply to products liability claims as provided [therein].'" Point II continues:

Subsection 3(5) of the statute specifically covers plaintiff's failure to undertake reasonable precautions in this case (i.e. failure to keep a careful lookout, failure to yield to a stop sign, driving too fast for conditions). There is no exception in the statute for "enhanced injury", "second collision", "crashworthiness" or any other subcategory of products liability claims. [Defendant] was accordingly entitled to have plaintiff's comparative fault submitted to the jury as provided by § 537.765 RSMo.

 Plaintiff suggests that defendant failed to preserve its claim of instructional error in failing to give the instruction it tendered on comparative fault because defendant did not set forth the instruction in question in the argument portion of its brief. Rule 84.04(e) provides, as applicable here, "If a point relates to the giving, refusal or modification of an instruction, such instruction shall be set forth in full in the argument portion of the brief." Defendant did not follow this directive. Defendant responded by including the text of the tendered instruction in its reply brief and suggesting that because Point II included a challenge to what defendant characterizes as "the [trial] court's erroneous

legal determination that comparative fault does not apply in second collision/enhanced injury/crashworthiness cases"; that "Rule 84.04(e) should not govern."

Rule 84.04(e) governs. The alleged error in Point II is the trial court's refusal to give a jury instruction tendered by defendant. By failing to set forth the instruction in question in the argument portion of the brief, defendant did not preserve the issue for appellate review. *Henderson v. Fields,* 68 S.W.3d 455, 478 (Mo.App.2001); *Long v. Missouri Delta Medical Center,* 33 S.W.3d 629, 638 (Mo.App.2000); *Ellis v. Jurea Apartments, Inc.,* 875 S.W.2d 203, 205 (Mo.App.1994).

▮▮▮▮▮▮ This court may, in its discretion, review the trial court's failure to give the tendered instruction for plain error. *Mitchem v. Gabbert,* 31 S.W.3d 538, 541 (Mo.App.2000); Rule 84.13(c). *Collins v. Hertenstein, supra,* discusses the authority Rule 84.13(c) grants an appellate court:

> Rule 84.13(c) grants us authority to consider "[p]lain errors affecting substantial rights ... when [we find] that manifest injustice or miscarriage of justice has resulted" from plain error. The rule presents a bit of a conundrum by granting us authority to review plain error only if we find manifest injustice or a miscarriage of justice. Making a finding of manifest injustice or a miscarriage of justice seems tantamount to a review. The Supreme Court suggested in *State v. Brown,* 902 S.W.2d 278, 284 (Mo.banc), *cert. denied,* 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995), that it intended for this seemingly enigmatic rule to mean that we should first examine plain error "facially," and review the matter only if we discern a substantial ground for believing that

> manifest injustice or miscarriage of justice has resulted from plain error. If we find that the claim of plain error does not facially establish substantial grounds for believing that manifest injustice or miscarriage of justice has occurred, we should decline to exercise our discretion to review a claim of error under Rule 84.13(c). "The rule makes it clear that not all prejudicial error—that is, reversible error—can be deemed plain error." *State v. Dowell,* 25 S.W.3d 594, 606 (Mo. App.2000). Plain error is evident, obvious and clear error. *In re Moore,* 885 S.W.2d 722, 727 (Mo.App.1994); *Ryder Farms, Inc. v. Hullinger Trucking, Inc.,* 837 S.W.2d 575, 576 (Mo.App.1992).

90 S.W.3d at 98–99.

▮▮▮▮ In ascertaining if there is a substantial ground to believe manifest injustice or miscarriage of justice occurred, this court must ascertain if the danger submitted in Instruction No. B is a danger to which plaintiff exposed himself and which was submitted in plaintiff's instructions. The fact that plaintiff may have exposed himself to a danger is not sufficient to submit an instruction unless it was the danger submitted in plaintiff's instructions.[2] *Arnold v. Ingersoll–Rand Co.,* 834 S.W.2d 192, 195 (Mo. banc 1992); *Wilson v. Danuser Mach. Co., Inc.,* 874 S.W.2d 507, 510 (Mo.App.1994). Defendant's brief does not refer this court to any place in the record on appeal that includes plaintiff's instructions. This court's review, albeit not exhaustively made, (the legal file component of the record on appeal consists of four volumes containing 730 pages, a 49–page supplemental legal file and an 18–page "second supplemental legal file") did not reveal copies of plaintiff's instructions

---

**2.** In the event defendant did not believe plaintiff's verdict-directing instruction was correct, it would have been required to challenge that instruction by making specific objections to the trial court. Rule 70.03.

as having been included.[3] The record before this court does not divulge the danger submitted to the jury by plaintiff's instructions. The face of the record before this court does not reveal a substantial ground for believing that manifest injustice or miscarriage of justice resulted; thus, this court declines to review Point II for plain error. Point II is denied.

■ Point III is directed to evidentiary rulings made during the course of trial. The statement of "Point III" in defendant's brief does not substantially follow the illustration that appears in Rule 84.04(d)(1). Rule 84.04(d)(1) recites the admonition, "The point shall be in substantially the following form: 'The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*].' "

Defendant's Point III is segmented in three parts (denominated A, B and C) interspersed with narratives, each of which is followed by a list of supporting cases, arguably in conflict with yet another admonition included in Rule 84.04(d)(4) that "[d]etailed evidentiary facts shall not be included." As emphasized in the oft-cited *Thummel v. King, supra,* the need for precision in points on appeal as the means for facilitating the appellate process is essential. 570 S.W.2d at 686; *see also Shochet v. Allen,* 987 S.W.2d 516, 518 (Mo. App.1999).

■ Albeit that "[v]iolations of rules of appellate procedure, and specifically Rule 84.04, constitute grounds for a court to dismiss an appeal," *C.C.J.K. v. Jackson,* 11 S.W.3d 110, 111 (Mo.App. 2000), "[a]ppellate courts … do not generally exercise discretion to disregard a defective point unless the defective point impedes disposition of the case on its merits. A brief impedes disposition on the merits if it fails to give notice to the other parties and to the appellate court of the basis for the claimed error." *Bolz v. Hatfield, supra* (internal citations omitted). *See also Superior Ins. Co. v. Universal Underwriters Ins. Co.,* 62 S.W.3d 110, 118 (Mo.App. 2001). Mindful that the purpose of Rule 84.04(d) is "to give notice to the opposing party of the precise matters which must be contended with and to inform the court of the issues presented for review," *Franklin v. Ventura,* 32 S.W.3d 801, 803 (Mo.App. 2000), defendant's extended Point III, together with the argument that follows, affords notice of the bases for the claimed errors.

The three events to which Point III is directed are (a) testimony of Janice Daniel; (b) plaintiff's evidence regarding inertial release of seatbelt buckles; and (c) denial of a request by defendant to cross-examine an expert witness for plaintiff about events defendant contends were related to the witness' change of opinion about forces produced by the accident in which plaintiff was injured.

### a. Testimony of Janice Daniel

■ The first event to which Point III is directed is the testimony of Janice Daniel, plaintiff's wife. Prior to her testimony, defendant elicited testimony from each of plaintiff's children, Doug Daniel, Milo Dan-

---

**3.** The record on appeal is required to "contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision." Rule 81.12(a). The appellant, in this case defendant, has the duty to prepare the legal file. Rule 81.12(c). An appellate court reviews what is placed before it by appellate counsel. *Thummel v. King,* 570 S.W.2d 679, 686 (Mo. banc.1978).

iel and Karen Conran, that plaintiff had not discussed the accident with them or his seatbelt use. The inquiries were made as part of defendant's cross-examination of the witnesses. Defendant also elicited testimony from medical and police personnel that plaintiff had not mentioned that he had been wearing his seatbelt while at the scene of the accident.

Mrs. Daniel was asked if plaintiff told her he had been wearing his seatbelt at the time of the accident. She was permitted to testify, over a hearsay objection by defendant, that plaintiff told her after the accident that he had been wearing his seatbelt. The trial court permitted the testimony "through curative admissibility." Defendant contends the trial court erred in permitting Mrs. Daniel to testify about what her husband told her concerning wearing his seatbelt. Defendant argues the testimony was hearsay; that it was not admissible on the basis of "curative admissibility."

The Eastern District of this court addressed circumstances much like those in this case in *Gevermuehle v. Geimer*, 619 S.W.2d 320 (Mo.App.1981). *Gevermuehle* involved an accident in which a truck being operated on a residential street struck a six-year-old child who crossed in front of the truck riding a "Big Wheel." The issue on which the case was tried was whether the truck driver failed to keep a careful lookout and drove at an excessive speed. The truck driver contended a vehicle parked along the side of the street had obstructed his view of the area along the side of the street from which the child emerged. There had been testimony from witnesses that there were no cars parked on the street at the time of the accident.

Plaintiff's counsel in the case asked a police officer who investigated the accident if the truck driver told the officer that the child came from behind a parked car. The

officer answered that he had nothing in his report that stated that. On cross-examination, defendant's counsel asked the officer to identify witnesses whose names he recorded. He was then asked if his report revealed whether those witnesses said anything about the boy coming from behind a parked vehicle. The officer answered that it did not. He was asked what the report indicated the witnesses said. The officer answered, over a hearsay objection by the plaintiff's counsel, that the witnesses observed the child ride his Big Wheel into the path of the vehicle; that the truck driver did not have time to stop; that he was not going at a fast speed. There was a defendant's verdict.

On appeal, the plaintiff in *Gevermuehle* contended the trial court erred in not sustaining the hearsay objection to the question to the officer about what the report indicated the witnesses told him. The court held the testimony was admissible on the basis of the "curative admissibility" evidentiary exception. It addressed the officer's testimony during direct examination that his report did not disclose that the witnesses said anything about the boy coming from a parked vehicle acknowledging, " 'It is hornbook law that a witness may not testify to facts if those facts are based on hearsay. It is no less a violation of the hearsay rule to set up a set of circumstances by the testimony of a witness which invites the inference of hearsay.' " 619 S.W.2d at 322–23, quoting *State v. Valentine*, 587 S.W.2d 859, 861 (Mo. banc 1979). The court held the testimony elicited on behalf of the truck driver was admissible saying:

We believe plaintiffs' evidence that the accident report contained no mention by the witnesses regarding parked cars implied that the witnesses had, in fact, seen no parked cars, and that [the truck driver's] visibility at the time of

the accident was unobstructed. Under these circumstances, the doctrine of curative admissibility applied, and as a matter of fundamental fairness, defendant was entitled to inquire as to what the officer did record these same witnesses as having said, even though this evidence too would have been otherwise inadmissible.

619 S.W.2d at 323.

Defendant contends the doctrine of curative admissibility is not applicable in this case because it elicited other testimony from medical and police personnel at the accident scene that plaintiff had not mentioned seatbelt use to them. Defendant argues, "thus nothing [is] to be 'cured' by [Mrs. Daniel's] hearsay."

▉▉▉▉ Curative admissibility applies to "evidence of the same type or character" already presented. *Gevermuehle*, 619 S.W.2d at 322, quoting *Dickerson v. St. Louis Pub. Serv. Co.*, 365 Mo. 738, 286 S.W.2d 820, 827 (1956). Its admission is an issue within the sound discretion of the trial court. *Gevermuehle*, 619 S.W.2d at 322; *Cato v. Modglin*, 545 S.W.2d 307, 312 (Mo.App.1976). Defendant sought information from plaintiff's family members concerning direct inquiries they either had or had not made of plaintiff. This went beyond the inquiries of medical and police personnel that occurred at the accident scene.[4] The inquiry to the medical and police personnel at the accident scene was of a different "type or character" than the inquiry to plaintiff's children concerning conversations subsequent to the accident and subsequent to plaintiff's removal from that location. The inquiry defendant made to plaintiff's children went to the same type or character of evidence plaintiff adduced from Mrs. Daniel. Defendant opened up the subject of plaintiff's discussion of the seatbelt issue with his family. "[A] party who opens up a subject is held either to be estopped from objecting to its further development or to have waived his right to object to its further development." *Mische v. Burns*, 821 S.W.2d 117, 119 (Mo. App.1991). This court finds no abuse of discretion. The part of Point III directed to Mrs. Daniel's testimony is denied.

### b. Evidence Regarding Release of Seatbelt Buckle

▉▉▉▉ The second issue defendant includes in Point III relates to evidence plaintiff presented concerning inertial release of what it characterizes as "side-release buckles." Defendant argues the trial court erred in allowing plaintiff to present "evidence concerning inertial release of *side-release* buckles unlike the … *end-release* buckle at issue." Part (B) of defendant's Point III argues evidence presented concerning "a GM crash test video with looped footage showing a single inertial release (with a test dummy flying out of its seat) again and again" was irrelevant and prejudicial; that the buckle design involved was different than the one in the truck plaintiff was driving, and the test depicted involved "radically different crash conditions (e.g. car v. truck, horizontal v. vertical impact)."

Plaintiff's evidence included a GM crash test video and GM crash test reports that demonstrated inertial release of a side-release seat buckle. The seatbelt buckle in the truck plaintiff drove was an end-release buckle. Defendant contends it was

---

4. Defendant had knowledge from depositions that plaintiff's children had not discussed plaintiff's seatbelt use with him because Mrs. Daniel, based on her conversation with plaintiff, relayed to them their father's statement that he had been using his seatbelt when the accident occurred. One of the children, Doug, had been in the hospital room when plaintiff told Mrs. Daniel that his seat belt was latched at the time of the accident.

error to permit the video and test reports to be introduced in evidence because the conditions involved in the tests depicted and reported were not substantially similar to those that existed at the time of plaintiff's accident. Defendant's complaints include that it was not one of their seatbelts (i.e., a seatbelt manufactured by defendant, an "IMMI seatbelt") that was used in the video or for purposes of the tests. Defendant argued further, in seeking to exclude the exhibits plaintiff offered and which were admitted in evidence, that the circumstances depicted in the video and report did not involve heavy trucks or vertical acceleration forces.

Plaintiff's evidence included testimony of David Renfroe, an expert witness. Mr. Renfroe testified that a National Highway Traffic Safety Association (NHTSA) report disclosed that tests revealed the IMMI seatbelt buckle could unlatch. On cross-examination, defendant asked Mr. Renfroe about a 1992 NHTSA study that concluded inertial unlatching was not a safety concern. Plaintiff was permitted, in rebuttal, to use the exhibits about which defendant complains to demonstrate that inertial unlatching could occur.

 Videotapes may be admitted in evidence at trial (1) to re-create events at issue in the litigation or (2) to illustrate physical properties or scientific principles the average layperson would find difficult to understand and which forms the foundation for an expert's opinion. *Grose v. Nissan North America, Inc.,* 50 S.W.3d 825, 830 (Mo.App.2001). The exhibits in question were offered to rebut the 1992 NHTSA study used by defendant in cross-examination of plaintiff's expert, Mr. Renfroe. There was no contention or inference that the exhibits were offered as reenactments or studies of plaintiff's accident or to explain how his seat belt unlatched. When a video is

used to explain a principle asserted by one of the parties, inaccuracies or any unreliability features of the video can be exposed on cross-examination. *Nash v. Stanley Magic Door, Inc.,* 863 S.W.2d 677, 681 (Mo.App.1993). In that way a jury can properly evaluate the evidence and assign it appropriate weight. *Id.* After plaintiff's redirect examination of Mr. Renfroe, defendant conducted additional cross-examination in which it pointed out dissimilarities between the buckle in the video and report and the buckle involved in plaintiff's accident, including the difference in the latching device used on the buckles.

 Appellate courts grant great deference to a trial court's ruling on the admissibility of a videotape and will not disturb such a ruling absent an abuse of discretion. *Id.* The trial court in this case did not abuse its discretion in admitting the exhibits in question. The part of Point III directed to the seat belt release evidence is denied.

### c. Events Related to Expert's Change of Opinion

 The third part of Point III is directed to defendant's attempt to cross-examine Bruno Schmidt, another of plaintiff's expert witnesses. Mr. Schmidt testified at trial that the acceleration forces in plaintiff's accident were primarily vertical and were sufficient to cause his seat belt buckle to inertially unlatch. Mr. Schmidt had been deposed prior to trial. In that deposition, he said the acceleration forces in plaintiff's accident were primarily horizontal. At trial, he told the jury he had changed his opinion after reviewing certain drop tests that had been performed by another expert employed by another party. The party who had employed the expert who performed the tests on which Mr. Schmidt relied had been a named defen-

dant in the case before settling the claim plaintiff made against it. The previous litigant, Mack Trucks, employed David Peruski to measure vertical forces in a "drop test." The test was performed by lifting a Mack truck with a crane and dropping the truck to determine acceleration of the truck during the drop and the effect the dropping of the truck had on the truck's suspension. The test was performed after Mr. Schmidt was deposed.

Defendant contended the reason Mr. Schmidt's opinion changed was that the truck manufacturer, Mack, and the door manufacturer, GenCorp, had settled the claims plaintiff made against them and been dismissed from the suit. Defendant sought to cross-examine Mr. Schmidt "concerning the timing of the Mack/GenCorp settlement and dismissal" to refute his explanation and to establish bias and lack of credibility. The trial court permitted defendant to point out the witness' change of opinion and the change in his testimony at trial from what it had been at deposition. It refused to allow defendant to present evidence of a settlement or dismissal of other parties. Defendant asserts in this appeal that the trial court erred in refusing its request to cross-examine plaintiff's expert "regarding the full circumstances surrounding his dramatic change in opinion regarding the accident forces." Defendant argues it should have been permitted to show Mr. Schmidt's opinion changed after GenCorp and Mack were no longer defendants in the case; that defendant "was entitled to demonstrate [the witness'] bias and lack of credibility on this point."

■■■ "The general rule is that settlement offers and the negotiations concerning them are inadmissible because the law favors the settlement of disputes." *Ellis v. Ellis*, 747 S.W.2d 711, 716 (Mo.App. 1988). *Ellis* suggests, however, quoting from Missouri Evidence Restated Section

408, "This rule does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." *Id. Ellis* then affirmed a dissolution judgment in a case in which the trial court permitted evidence of offered resolution of the dispute. The settlement proposal in *Ellis* involved a suggestion that claims of one parent of child abuse by another might be withdrawn if a change of custody action by the other parent were not pursued. Notably, this was not an action tried before a jury.

Inquiry about a settlement between a witness and one of the litigants to an action in which he was testifying was not permitted at the trial of *Joice v. Missouri–Kansas–Texas R. Co.*, 354 Mo. 439, 189 S.W.2d 568, 575 (1945). The witness had settled a personal injury claim with the defendant railroad that arose from the same accident that was the subject of the case in which he thereafter testified for the railroad. The action was a Federal Employers' Liability Act case. *Joice* held under the circumstances of that case that it was error not to have allowed the witness to be cross-examined about the fact he settled his claim with the defendant in order to infer bias or an interest by the witness in the outcome of the case.

■■■ Absent special circumstances such as are evident in *Ellis* and *Joice*, admission of a settlement at trial serves no purpose and, if customarily done, would deter parties from settling and frustrate the public policy of encouraging settlements. *Rodgers v. Czamanske*, 862 S.W.2d 453, 460 (Mo.App.1993). Settlement agreements are highly prejudicial and should not be admitted in evidence unless there is a clear and cogent reason to do so. *Asbridge v. General Motors*

*Corp.*, 797 S.W.2d 775, 781 (Mo.App.1990). The extent and scope of cross-examination of an expert witness is within the trial court's discretion. *Callahan v. Cardinal Glennon Hospital*, 863 S.W.2d 852, 868–69 (Mo. banc 1993).

Defendant presented no compelling reason why the settlement by Mack and Gen-Corp would demonstrate bias if the settlement were permitted to be shown. The record discloses nothing from which this court can conclude the trial court abused its discretion in denying defendant's request to cross-examine plaintiff's expert on the fact that other parties who were originally named defendants in the case had settled claims plaintiff made against them and been dismissed from the suit. The part of Point III claiming this was error is denied. Point III is denied.

Defendant's final point on appeal, Point V, is directed to the trial court's allocation of settlement proceeds realized from other parties who were dismissed from the case by reason of settlements effected prior to trial. Plaintiff and his wife, Janice Daniel, negotiated settlements with Mack Trucks and GenCorp of plaintiff's personal injury claim and Mrs. Daniel's loss of consortium claim for $550,000 and $450,000, respectively.[5] At the time of trial, Mrs. Daniel was not a party to the lawsuit.

Verdict was returned May 11, 2001, finding the issues in favor of plaintiff and against defendant. Plaintiff's damages were assessed in the amount of $2,000,000. Defendant filed a motion on May 16, 2001, denominated "Motion to Determine Credit for Settlement Proceeds" in which defendant requested the trial court to determine "the proper credit to which [defendant] is entitled against the judgment obtained by [plaintiff] by virtue of the settlement ... with Mack Trucks, Inc. and GenCorp, Inc." The trial court heard oral arguments on the motion June 6, 2001, and took the motion under advisement. This court, in its review of the record on appeal, found no copy of an order ruling on the motion by docket entry or other document in the legal file component of the record on appeal in this case.

Judgment was entered September 10, 2001. An amended judgment was filed September 17, 2001. The amended judgment recites the conduct of the trial through its completion May 11, 2001. It states the jury returned its verdict; that the verdict was for plaintiff in the amount of $2,000,000. It then recites:

1. Judgment is entered in favor of plaintiff Larry Daniel and against defendant Indiana Mills & Manufacturing, Inc., in the amount of $1,450,000.00. The amount of the judgment is calculated as follows:

| | |
|---|---|
| Total Damages | $2,000,000.00 |
| Less: Setoff from settlement with Mack Truck | 550,000.00 |

---

**5.** The only record to which the parties have directed this court's attention that identifies a settlement by plaintiff's wife of a loss of consortium claim is defendant's motion to determine credit for settlement proceeds. That motion identified the amount of Mrs. Daniel's settlement as $450,000. A copy of plaintiff's response to the motion did not dispute the amount of her settlement, nor does plaintiff's respondent's brief in this case dispute the amount of $450,000 as a reasonable amount for settlement of the loss of consortium claim. This court, therefore, considers the assertion that Mrs. Daniel settled her claim for that amount as a fact to which the parties agree. "Where a statement of fact is asserted in one party's brief and conceded to be true in the adversary's brief, we may consider it as though it appears in the record." *Thornbury v. Morris Oil Co., Inc.*, 846 S.W.2d 238, 239 n. 2 (Mo.App.1993).

Total Amount of Larry Daniel's Judgment 1,450,000.00

2. Costs are taxed against defendant Indiana Mills & Manufacturing, Inc.

3. The Court expressly finds that there is no just reason for delay and enters its Judgment this *17* of September, 2001.

. . .

Point V asserts "[t]he trial court erred . . . in concluding that it lacked discretion to re-allocate the $1,000,000 Mack/Gen-Corp settlement proceeds and abused its discretion in finding that plaintiffs' [sic] allocation of $450,000 to [Mrs. Daniel's] loss of consortium claim was made in good faith." Point V continues by asserting § 537.060 permits a trial court "to look beyond 'stipulated amounts' and determine the *actual amount of consideration paid to settle a given claim*."[6] Additional narrative appears in the point that alleges the trial court had a "mistaken belief" regarding its authority to allocate the settlement amounts and a "misplaced reliance" by the trial court on the "ultimate jury verdict."

Point V presents this court with two distinct problems. First, it does not comply with the directive of Rule 84.04(d)(1)(A) to "identify the trial court ruling or action that the appellant challenges." Second, it does not address whatever complaint is attempted to be made by drawing from the trial court record in the case thereby, arguably, failing to explain in the context of the case a basis for a claim of reversible error.

■■ Defendant's briefs do not refer this court to any place in the record on appeal where the motion to determine credit for settlement proceeds was ruled on. To the extent this court has been able to peruse the lengthy record on appeal, it found no order by the trial court ruling on that motion. The only document this court found in which the trial court addressed settlement proceeds is the part of the judgment that provides "[s]etoff from settlement with Mack Truck" and deducts $550,000 from the $2,000,000 verdict in arriving at the $1,450,000 judgment awarded plaintiff. There being no order disposing of the motion defendant presented to the trial court, the motion is a *non sequitur*.[7] Absent a finding by the trial court on an issue, the issue is not for appellate review. *Boatmen's Bank v. Foster*, 878 S.W.2d 506, 508 (Mo.App.1994). To undertake to review an issue not having been decided by the trial court would be akin to rendering an advisory opinion, something appellate courts are wont not to do. *Trimble v. Pracna*, 51 S.W.3d 481, 503 (Mo.App.2001); *Jantz v. Brewer*, 30 S.W.3d 915, 920 (Mo.App.2000).

■■ The second affront to appellate procedure is defendant's undertaking to rely on a letter from the trial judge to the attorneys of record in this case regarding the subject of allocation of settlement proceeds. There appears in a supplemental legal file provided by defendant a copy of a letter dated September 5, 2001, that speaks of issues related to allocation of settlement proceeds. The letter is not an order or judgment. It does not reflect a date-file stamp denoting it as a part of the case file. The trial court docket sheet

---

**6.** References to statutes in this opinion are to RSMo 2000.

**7.** Arguably, absent the trial court having found no just reason for delay in rendering judgment in this case, the unresolved motion might have precluded finality of judgment for purposes of appeal. *See* Rule 74.01(b).

entries that are included in the legal file do not note the filing of the letter. The letter sought to be thrust upon this court as a basis for appellate review is dehors the record. "Matters dehors the record are not considered in the course of appellate review." *Brawley & Flowers, Inc. v. Gunter,* 934 S.W.2d 557, 561 (Mo.App.1996). See *also State v. Hightower,* 951 S.W.2d 712, 717 (Mo.App.1997); *Cox v. Crider,* 721 S.W.2d 220, 225 (Mo.App.1986); *Browning–Ferris Industries of Kansas City, Inc. v. Dance,* 671 S.W.2d 801, 807 (Mo.App. 1984).

Defendant did include in its post-trial motion a request for the trial court "to amend and correct the ... amended judgment[ ]" by setting off and reducing "the amount of any jury verdict by the full amount of consideration paid in settlement to plaintiffs ($1,000,000.00) or an amount significantly greater than the $550,000.00 allocation." This court's consideration of defendant's complaint that Mrs. Daniel's settlement should have been allocated to setoff or reduce the verdict rendered for plaintiff is limited to the trial court's failure to grant the request included in the post-trial motion.

Defendant's complaint with respect to the trial court's failure to allocate part or all of Mrs. Daniel's settlement against the verdict is based on the assertion that the amount paid to Mrs. Daniel for her claim was not made in good faith. There is no record of any proceeding before the trial court from which this court could find a demonstration of lack of good faith in arriving at the amount of settlement of Mrs. Daniel's claim. The obligation to make a record in the trial court concerning issues a party may wish to present on appeal is on that party. *State v. Naucke,* 829 S.W.2d 445, 460 (Mo. banc), *cert. denied,* 506 U.S. 960, 113 S.Ct. 427, 121 L.Ed.2d 348 (1992); *Chilton v. Gor-*

*den,* 952 S.W.2d 773, 777 (Mo.App.1997). Point V is denied. The judgment is affirmed.

PREWITT, P.J., and RAHMEYER, C.J., concur.