

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| THOMAS YUNCKER AND CHRISTOPHER GUTIERREZ, | ) ) ) | WD84645 |
| Respondents, | ) ) | OPINION FILED: |
| v. | ) ) | May 17, 2022 |
| DODDS LOGISTICS, LLC AND KEITH DODDS; | ) ) ) | |
| Respondents, | ) ) | |
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) | |
| Appellant. | ) ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**Honorable Bryan Round, Judge**

**Before Division Four:**
**Cynthia L. Martin, C.J., Janet Sutton, J. and Gary W. Lynch, Sp. J.**

Zurich American Insurance Co. (Zurich) appeals a Jackson County Circuit Court judgment confirming an arbitration award that found Mr. Keith Dodds and Dodds Logistics, LLC (Dodds Logistics) negligent in an October 2020 tractor-trailer/motor vehicle accident in Kansas and awarded damages to Mr. Thomas Yuncker and Mr.

Christopher Gutierrez. Zurich contends that the circuit court erred in failing to rule on its post-judgment motion to intervene, denying or impliedly denying its motion to vacate or set aside the judgment, and entering the judgment without proper notice to Zurich under section 537.065.2.[1]  Because Zurich is not a party to the suit, nor aggrieved by the judgment, we dismiss the appeal.

Driving on behalf of Dodds Logistics, Mr. Dodds fell asleep behind the wheel of a tractor-trailer in October 2020 and struck Mr. Yuncker's vehicle as it slowed while he approached vehicles and a police car with flashing lights parked on the shoulder of a highway in Johnson County, Kansas. Mr. Yuncker was working as an Uber driver at the time, and passenger Mr. Gutierrez was in the back seat. The impact pushed Mr. Yuncker's vehicle into a tractor-trailer at the side of the highway. Both men had to be extricated from the Uber vehicle, and both sustained serious injuries that will have lasting consequences.

Mr. Yuncker and Mr. Gutierrez filed a petition alleging negligence and negligence per se in Jackson County Circuit Court on December 28, 2020, against Mr. Dodds and Dodds Logistics. Mr. Yuncker, Mr. Gutierrez, and Mr. Dodds are Kansas residents. Dodds Logistics is a Kansas corporation. The Dodds Respondents did not object to jurisdiction or venue, although their January 2021 answer to the petition denied a number of allegations and asserted several affirmative defenses.[2]

---

[1] Statutory references are to RSMo. (2017 Supp.), unless otherwise indicated. Note that more recent amendments to section 537.065 took effect in 2021. The parties do not contend that these changes apply here.

[2] Mr. Thomas Yuncker, Mr. Keith Dodds, and Dodds Logistics, LLC briefly argue that Zurich American Insurance Co. (Zurich) did not engage in a choice-of-law analysis to establish that section 537.065 applies to these facts. We do not consider this matter further as it has not been briefed.

Counsel for the Dodds Respondents wrote to four insurance companies, Zurich among them, on February 5, 2021, enclosing a flash drive with information about the accident and injuries, and a more detailed letter from counsel containing the VIN numbers for vehicles involved in the crash, including an "Amazon box trailer." The more detailed letter on the flash drive also stated that Mr. Dodds and Dodds Logistics were tendering their defense to the letter's recipients. Noting that time was of the essence, the letter requested a response within 14 days of receipt as to whether the companies would defend and indemnify Mr. Dodds and/or Dodds Logistics. The letter further stated that the primary insurance carrier had paid the policy limits ($1 million) to the injured parties "pursuant to a non-execution agreement[.]"[3]

---

[3] Mr. Yuncker and Mr. Christopher Gutierrez also referred to this non-execution agreement in the application to confirm the arbitration award. They stated that it was entered in exchange for payment of the primary insurer's policy limit and that it required them to arbitrate their dispute "in the event no other insurance company agreed to provide an unconditional defense of [their] personal injury claims arising out of the subject crash." This non-execution agreement has not been included in the legal file, and it is unknown when the parties signed it. On the basis of the February 5, 2021, communication with Zurich and the other insurance companies, however, the non-execution agreement was arguably entered before they were given an opportunity to defend and indemnify Mr. Dodds and Dodds Logistics. While section 537.065.1 does not explicitly require that insurers have the opportunity to defend a tortfeasor without reservation *before* a non-execution agreement is entered, Missouri courts have interpreted the statute as establishing this sequence of events. *See Desai v. Seneca Specialty Ins. Co.*, 581 S.W.3d 596, 600 (Mo. banc 2019) (noting that amended statute added "a *prerequisite* to the execution of a valid contract that did not previously exist. Under the amended statute, a tortfeasor is able to enter into a contract only if the tortfeasor's insurer or indemnitor '*had* [sic] the opportunity to defend the tort-feasor without reservation but refuse[d] to do so.' Section 537.065.1, RSMo Supp. 2017." (emphasis added)). The amended statute stated in relevant part, "Any person having an unliquidated claim for damages against a tort-feasor, on account of personal injuries, bodily injuries, or death, provided that, such tort-feasor's insurer or indemnitor *has* the opportunity to defend the tort-feasor without reservation but refuses to do so, may enter into a contract with such tort-feasor . . . ." § 537.065.1 (emphasis added). While Zurich contends that the non-execution agreement was not valid because Zurich had not been given the opportunity to defend before it was entered, nothing in the record establishes that the agreement was entered before the primary insurer was given the opportunity to defend. Zurich also contends that the non-execution agreement was entered before the litigation was filed, and thus, with no case or controversy in issue, the circuit court lacked jurisdiction to consider the matter. Without the agreement in the record, we cannot conclude that it was entered before Mr. Yuncker and Mr. Gutierrez filed a petition against the tortfeasors in Jackson County Circuit Court.

Zurich was potentially implicated because it had issued a commercial auto insurance policy covering the Amazon trailer that Mr. Dodds was hauling when the accident happened.[4] Two insurers responded that they had not insured the Dodds vehicle in October 2020; a third insurer did not ultimately respond, but had asked for a replacement flash drive, apparently lost in transit, which request was accommodated; Zurich acknowledges that it received the cover letter on February 10, 2021, and claims that it did not receive the flash drive but attempted to contact counsel by purportedly leaving a voicemail message.[5] Without indicating that the flash drive was missing, the company formally responded in a February 12, 2021, letter stating that it could not "confirm a valid policy number or alleged insured entity based on the information you provided." Zurich stated that it had, accordingly, "cancelled" the claim.[6] Zurich also stated that it would create a new claim number if a valid policy number for an allegedly insured entity were forwarded to the company.

Mr. Dodds and Dodds Logistics entered an arbitration agreement in early March 2021 with Mr. Yuncker and Mr. Gutierrez. An evidentiary hearing was held before an

---

[4] Because no one has asserted that Zurich's insured was a tortfeasor, it is unclear to this Court whether section 537.065 actually has any applicability. But that is a question for another court and another proceeding.

[5] As part of its argument in support of the first point relied on, Zurich asserts that it was given "just 14 days to respond to the February 5, 2021, letter, . . ." and, in fact, it did so. Interestingly, this time limitation appeared only in the letter included on the flash drive.

[6] The communications between Zurich and counsel for Mr. Dodds and Dodds Logistics are not a model of clarity. It is arguable that a letter stating that a claim is cancelled, written in response to a request that the insurer respond within 14 days by indicating whether it would provide a defense and indemnification, is the equivalent of a refusal to defend and indemnify as it did not conform to the requester's terms by the deadline. *See Woods ex rel. Woods v. Corey,* 192 S.W.3d 450, 459 (Mo. App. S.D. 2006) ("Inherent in the offeror's power as master of his offer is the power to insist that the offer may terminate upon the occurrence of a condition and that it may only be accepted in accordance with the conditions stated by it." (citation omitted)).

arbitrator in April 2021. The arbitrator issued an award in May 2021. While the arbitrator did not find sufficient evidence to support a punitive-damages award, compensatory damages of $13,500,197.25 were awarded to Mr. Yuncker, and $7,500,000 to Mr. Gutierrez.

Mr. Yuncker and Mr. Gutierrez filed an unopposed application in the circuit court on May 13, 2021, to confirm the arbitration award.[7] The court entered a judgment confirming the arbitration award on May 26, 2021, and thus resolved all issues then pending before the court. Two days later, Zurich filed a motion to intervene which included a request that the court allow Zurich to file a motion to vacate and set aside the judgment.[8] Mr. Yuncker and Mr. Gutierrez filed a response to the motion, and, on June 14, 2021, Zurich filed a pleading requesting a hearing before June 24, 2021, on the motion to intervene, but made no attempt to notice a hearing for a specific date.

---

[7] The application was filed before the court in which the initial petition had been filed, so the litigation was pending when Zurich received the February 5, 2021, communication from counsel for Mr. Dodds and Dodds Logistics and remained pending until the circuit court entered the judgment confirming the arbitration award. Zurich repeatedly claims on appeal that it was never notified about the existence of the pending lawsuit and implies that this is a requirement under section 537.065. Though the company's policy may require such notification and any alleged shortcomings in notice may presumably be addressed during declaratory-judgment/garnishment proceedings currently pending in Kansas, the statute simply requires notification about the non-execution agreement before judgment may be entered. § 537.065.2 ("Before a judgment may be entered against any tort-feasor after such tort-feasor has entered into a contract under this section, the insurer or insurers shall be provided with written notice of the execution of the contract and shall have thirty days after receipt of such notice to intervene as a matter of right in any pending lawsuit involving the claim for damages.").

[8] The proposed motion to vacate and set aside the judgment, attached as an exhibit to the motion to intervene, invoked the authority of Rule 55.27 and section 537.065. The motion to intervene invoked the authority of Rule 52.12 and section 537.065. Under section 537.065, Zurich would have had 30 days from the date it received notice of the non-execution agreement within which to exercise its right to intervene in the underlying litigation. § 537.065.2. The non-execution agreement did not have to be referred to as a contract under section 537.065 for the statute to apply. § 537.065.3 ("The provisions of this section shall apply to any covenant not to execute or any contract to limit recovery to specified assets, regardless of whether it is referred to as a contract under this section."). Zurich arguably received notice on February 10, 2021, and did not file the motion to intervene until more than three months later on May 28, 2021. A motion to intervene filed beyond the 30-day limitation of section 537.065.2 is untimely. *See Barnett v. Columbia Maint. Co.*, 632 S.W.3d 396, 402 (Mo. App. E.D. 2021).

5

The court issued no ruling on the motion to intervene within the 30-day period after entry of its May 26, 2021, judgment confirming the arbitration award. Zurich filed a notice of appeal to this Court on July 2, 2021.[9]

**Legal Analysis**

Zurich has raised nine points relied on. Five relate to the circuit court's failure to rule on the motion to intervene. Three relate to the court's alleged denial or implied denial of the motion to vacate and set aside the judgment. One alleges that it was error to enter a judgment when Zurich did not receive the notice required by section 537.065.2.

We cannot address these points without first considering the question of Zurich's standing to bring the appeal. *See Stichler v. Jesiolowski*, 547 S.W.3d 789, 793 (Mo. App. W.D. 2018) ("The right to appeal . . . within the meaning of § 512.020 is jurisdictional." (citation omitted) (footnote omitted)). "Any *party* to a suit *aggrieved by* any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution" is permitted to take an appeal from a "[f]inal judgment in the case . . . ." § 512.020 (emphasis added). We asked the Appellant and Respondents to address whether Zurich's post-judgment motion to intervene afforded it standing to appeal the judgment. We conclude that it did not.

The May 26, 2021, judgment qualified as a judgment under Rule 74.01(a),[10] as it was "a decree" or "any order from which an appeal lies" that was "signed by the

---

[9] Zurich filed a declaratory judgment action on June 7, 2021, in a Kansas district court against Mr. Dodds, Dodds Logistics, Mr. Yuncker, and Mr. Gutierrez; the latter two have counterclaimed for garnishment, and the Dodds Respondents have counterclaimed for breach of contract.

[10] Rule references are to Mo.R.Civ.P. (2021), unless otherwise indicated.

6

judge and denominated 'judgment.'" An appeal lies from a judgment that resolves all issues as to all parties pending before the court when entered. *See Boley v. Knowles*, 905 S.W.2d 86, 88 (Mo. banc 1995) ("An appealable judgment disposes of all issues in a case, leaving nothing for future determination."); § 511.020 (defining a "judgment" as "the final determination of the right of the parties in the action.").[11]

The circuit court's entry of a Rule 74.01(a) judgment triggered Rule 75.01, which states that a "trial court retains control over judgments during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time." *See In re Marriage of Short*, 847 S.W.2d 158, 162 (Mo. App. S.D. 1993) ("The purpose of Rule 75.01 is to enable the trial court to rectify any errors in the judgment, and thus simplify or forestall any further litigation at the appellate level. Once a [Rule 74.01(a)] judgment is entered . . . the thirty-day time period under Rule 75.01 begins to run." (citation omitted)).

Zurich was not a party to the underlying suit when the court's judgment was entered on May 26, 2021. *See State ex rel. AJKJ, Inc. v. Hellman*, 574 S.W.3d 239, 242 (Mo. banc 2019) (holding that subdivision residents who filed a motion to intervene in a deed-reformation case after judgment was entered were not parties to the suit when judgment was entered). Plainly, when the judgment was entered, Zurich was neither a party to the suit nor aggrieved by the judgment, thus affording it no standing to appeal.

---

[11] Rule 74.01(a) judgments resolving all issues then pending in a case are sometimes referred to in our jurisprudence as "final judgments." In fact, they are merely appeal-eligible judgments that do not become "final judgments" until an appeal can actually be filed under Rule 81.05.

Zurich contends that, because it is permissible to file a motion to intervene within 30 days after a Rule 74.01(a) judgment is entered, it became a "party" to the suit with the right to appeal the judgment once its motion to intervene was filed. We disagree.

Zurich's contention relies on caselaw involving motions to intervene filed *before* a Rule 74.01(a) judgment was entered. When a motion to intervene is filed *before* the entry of a Rule 74.01(a) judgment, the trial court's interlocutory ruling on the motion is incorporated into a later-filed Rule 74.01(a) judgment, such that resolution of the motion affords any person aggrieved by the ruling standing to appeal. *See State ex rel. Koster v. ConocoPhillips Co.*, 493 S.W.3d 397, 401-02 (Mo. banc 2016). Also, when a motion to intervene is filed *before* the entry of judgment, a trial court's failure to rule on the motion disqualifies the judgment as a Rule 74.01(a) judgment, because no appeal will lie from a denominated judgment that fails to resolve all issues then pending before the court for determination.[12] *See Henson v. Merob Logistics, LLC,* 633 S.W.3d 838, 842-43 (Mo. App. W.D. 2021) (dismissing appeal taken from denominated judgment where trial court failed to rule on pending motion to intervene filed before judgment was entered).

Here, Zurich's motion to intervene was filed *after* the circuit court's entry of a Rule 74.01(a) judgment that resolved all issues then pending before the court and was therefore eligible for appeal, triggering Rule 75.01. This is a distinction with a difference that renders *ConocoPhillips*, *Henson*, and other similar cases Zurich relies on of no relevance.

---

[12] The exception for properly certified Rule 74.01(b) judgments is inapplicable to this case.

8

Once a Rule 74.01(a) judgment is entered, the judgment becomes final for purposes of appeal under Rule 81.05(a) at the expiration of the 30-day window set forth in Rule 75.01 *unless* the trial court *takes action* as authorized by Rule 75.01 to vacate or reopen the judgment, or *unless* an authorized after-trial motion is filed, extending the court's jurisdiction beyond the 30-day window for the limited purpose of ruling on the authorized after-trial motion. *See* Rules 78.01 through 78.07. A motion to intervene filed *after* a Rule 74.01(a) judgment is entered, and thus after Rule 75.01 is triggered, is not an authorized after-trial motion, because such motions must be filed by parties to the underlying matter. *See State ex rel. AJKJ, Inc.*, 574 S.W.3d at 242 (Mo. banc 2019) ("Motions filed by non-parties are not authorized after-trial motions that extend the circuit court's jurisdiction pursuant to Rule 81.05(a). A motion to intervene, therefore, is not an authorized after-trial motion.").

Though a motion to intervene is not an authorized after-trial motion, it is nonetheless a motion that is *allowed* to be filed after a Rule 74.01(a) judgment is entered. *Id.* at 242-43. The mere filing of a post-judgment motion to intervene by a non-party, however, does not alter the judgment's eligibility for appeal under Rule 74.01(a), or mean that the judgment will not automatically become final for purposes of appeal under Rule 81.05(a) unless the trial court takes timely, authorized action to reopen or vacate the judgment. And, because a post-judgment motion to intervene is not an authorized after-trial motion, it must be ruled on, if at all, within the 30-day window contemplated by Rule 75.01. *Id.* at 243 (holding court's ruling on motion to intervene was void because a motion to intervene filed "during the 30-day window in

which the circuit court retained jurisdiction" was not ruled on "until after the 30[-]day[] window expired.").

When a post-judgment motion to intervene is not ruled on within 30 days of entry of a Rule 74.01(a) judgment, the judgment becomes final for purposes of appeal under Rule 81.05(a), and the movant, who is not aggrieved by the judgment, remains a non-party to the proceeding, the same status the movant had when the judgment was entered.[13] This is the conclusion the Missouri Supreme Court reached in *State ex rel. AJKJ, Inc.*, 574 S.W.3d at 241, 243-44, where residents living in a subdivision moved to intervene in a deed-reformation case after a Rule 74.01(a) judgment was entered, but while the trial court retained jurisdiction over the judgment under Rule 75.01. The Missouri Supreme Court held the following as to the circuit court's failure to rule on the pending motion to intervene while it retained Rule 75.01 jurisdiction over the judgment:

> Here, the reformation judgment became final pursuant to Rule 81.05(a)(1) . . . 30 days after the circuit court first entered judgment reforming the deed. The circuit court had no legal basis to take further action after that point. Although Residents filed their motion to intervene during the 30-day window in which the circuit court retained jurisdiction, the court did not rule on the motion to intervene until after the 30 days [sic] window expired. The circuit court . . . lacked jurisdiction to rule on Resident[s'] motion to intervene after the underlying reformation judgment became final. As a result, the court's ruling on Residents' motion to intervene was void.
>
> *. . . . Residents, therefore, never became parties to the reformation action*.

---

[13] As recently noted by this Court, "To be a party, a person must either be named as a party in the original proceedings, or be later added as a party by appropriate trial court orders." *MILA Homes, LLC v. Scott*, 608 S.W.3d 658, 661 (Mo. App. W.D. 2020) (citations omitted). Further, "The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled." *Id.* (citations omitted).

*Id*. at 243 (emphasis added). *See also City of Montgomery v. Newson*, 469 S.W.2d 54, 56 (Mo. App. 1971) ("Appellant's motion, although filed within the thirty-day period, was not acted on by the court within that period. Upon the expiration of the thirty-day period, the judgment became final, the court lost jurisdiction to reopen it, and no case was then pending into which [movant] could intervene. In order to intervene there must be an action pending into which to intervene.").

The same is true here. Zurich was not a party to the suit when the circuit court entered its May 26, 2021, judgment. Zurich did not become a party to the suit by the mere filing of a post-judgment motion to intervene. And Zurich remained a non-party to the suit, unaggrieved by the judgment, when the circuit court failed to rule on the motion to intervene during the 30-day window contemplated by Rule 75.01. Accordingly, Zurich lacks statutory authority to appeal from the judgment confirming the arbitration award under section 512.020, and this appeal must be dismissed. *See Henson,* 633 S.W.3d at 841 (observing that right to appeal is statutory and that "[a]n appeal without statutory sanction confers no authority upon an appellate court except to enter an order dismissing the appeal." (citation omitted)).

Zurich attempts to escape this reality by claiming in its first five points relied on that the circuit court's failure to rule on the pending motion to intervene during the 30-day window following entry of the May 26, 2021, judgment is, in effect, a denial of the motion.[14] This argument is not persuasive for two reasons. First, our cases are clear that we do not interpret a failure to rule on a motion to intervene as a ruling *sub*

---

[14] Presumed in Zurich's argument, although not at all developed, is that Zurich would have been entitled to pursue an appeal of the May 26, 2021, judgment had the circuit court denied its post-judgment motion to intervene during the 30-day window contemplated by Rule 75.01. The validity of that premise should not be assumed, but it is not before us and will not be addressed.

11

*silentio. See, e.g., Howe v. Heartland Midwest, LLC*, 604 S.W.3d 774, 779 (Mo. App. W.D. 2020); *see also Daniel v. Ind. Mills & Mfg., Inc.*, 103 S.W.3d 302, 318 (Mo. App. S.D. 2003) (refusing to review claim that trial court erred in ruling on motion where record did not show it was ruled on, court states, "Absent a finding by the trial court on an issue, the issue is not for appellate review. To undertake to review an issue not having been decided by the trial court would be akin to rendering an advisory opinion, something appellate courts are wont not to do." (citation omitted)).

Second, and even more compelling, although a post-judgment motion to intervene is allowed to be filed, Rule 75.01 does not require a trial court to take any action on a motion filed by a non-party. And the only rule that deems a trial court's inaction on a post-judgment motion to be a denial is Rule 78.06, which treats an authorized after-trial motion as "overruled for all purposes" if not ruled on within 90 days after the last such timely motion was filed.

The circuit court's failure to rule on Zurich's motion to intervene within the 30-day window during which it had the jurisdiction to do so therefore is neither deemed a denial of the motion nor independently actionable error.[15] *See State ex rel. AJKJ, Inc.*, 574 S.W.3d at 242-43 (declaring circuit court ruling on post-judgment motion to intervene entered more than 30 days after judgment was entered to be void and declaring the movants to have no status in the case as parties).

---

[15] To conclude otherwise would afford a non-party the power to manipulate when a Rule 74.01(a) judgment becomes final for purposes of appeal under Rule 81.05(a) by, for example, filing a post-judgment motion close to the expiration of the 30-day window during which a trial court retains jurisdiction over a judgment under Rule 75.01. We are aware of no authority for the proposition that a trial court commits error by failing to rule on a motion filed after a Rule 74.01(a) judgment is entered. *See Henson v. Merob Logistics, LLC,* 637 S.W.3d 838, 842-43 (Mo. App. W.D. 2021) (dismissing appeal because it was taken from judgment rendered ineligible for appeal under Rule 74.01(a) in light of unruled motion to intervene filed *before* judgment was entered, but not based on finding that trial court committed error in failing to rule on motion).

Because Zurich has no standing to appeal from the judgment, its appeal must be dismissed. We are not troubled by Zurich's implication that a ruling depriving it of the opportunity to appeal and/or of the opportunity to intervene in the underlying case will result in manifest injustice or a miscarriage of justice. Zurich's constitutionally based claims—V and VII—have been considered and rejected in cases such as *Loveland v. Austin*, 626 S.W.3d 716, 728, 730-31 (Mo. App. E.D. 2021) (finding no violation of constitutional rights of due process and access to the courts in light of insurer's opportunity to litigate coverage issues in a pending garnishment proceeding); *see also Knight ex rel. Knight v. Knight*, 609 S.W.3d 813, 820 (Mo. App. W.D. 2020) (ruling that, in context of claims of alleged constitutional violations, 2017 amendment to section 537.065.2 did not give "insurers the right to contest the insured's liability, and the claimant's damages, on the merits, whatever the status of the litigation at the time of the insurer's intervention."). Zurich's policy coverage issues can be litigated in the Kansas proceedings. The Missouri Supreme Court has stated that a tort-action judgment "is not conclusive on the parties in the garnishment suit as to facts not actually litigated in the first action and to facts that were merely evidentiary or . . . inferentially involved in the first." *Allen v. Bryers*, 512 S.W.3d 17, 33 (Mo. banc 2016) (citation omitted).

## Conclusion

Zurich was not a party to the suit when the May 26, 2021, judgment was entered and did not become a party to the suit when it filed a post-judgment motion to intervene. The post-judgment filing of the motion to intervene did not affect the judgment's eligibility for appeal under Rule 74.01(a) or its finality for purposes of appeal under

13

Rule 81.05(a) 30 days after the judgment's entry. Because Zurich is not a party to the suit aggrieved by the judgment, it has no standing to appeal the judgment. We dismiss the appeal.

_____
Janet Sutton, Judge

Martin, C.J. and Lynch, Sp. J. concur.